Brady et al. *v.* Safety-Kleen Corporation et al.

[Cite as *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624.]

(No. 90–166—Submitted March 20, 1991—Decided August 27, 1991.)

*Frank A. Ray Co., L.P.A., Frank A. Ray, Piacentino & Piacentino* and *C. Michael Piacentino,* for petitioners.

*Schottenstein, Zox & Dunn, James E. Davidson, Robert D. Weisman* and *John P. Gilligan,* for respondent.

*Lee I. Fisher,* Attorney General, *Jeffery W. Clark* and *Dennis J. Hufstader,* for intervenor respondent Industrial Commission of Ohio.

*Murray & Murray Co., L.P.A., Thomas J. Murray, W. Patrick Murray, Steven C. Bechtel* and *Nancy L. Ogden,* urging unconstitutionality for *amicus curiae,* Ohio Academy of Trial Lawyers.

*Stewart Jaffy & Associates Co., L.P.A.,* and *Stewart R. Jaffy,* urging unconstitutionality for *amici curiae,* Ohio AFL–CIO and Ohio United Auto Workers.

*Squire, Sanders & Dempsey, Preston J. Garvin, Mark S. Floyd* and *Martin Harris,* urging constitutionality for *amicus curiae,* Ohio Chamber of Commerce.

*Dinsmore & Shohl, George B. Wilkinson, Joan M. Verchot* and *Joseph L. Sallee,* urging constitutionality for *amici curiae,* Dover Corporation and Johnson & Hardin Company.

*Petro, Rademaker, Matty & McClelland, Robert C. McClelland, Dennis A. Rademaker, Eugene P. Whetzel* and *Anne M. Wilhelm,* urging constitutionality for *amicus curiae,* Ohio Manufacturers' Association.

*Vorys, Sater, Seymour & Pease, Robert A. Minor* and *Robin R. Obetz,* urging constitutionality for *amici curiae,* Ohio Farm Bureau and Ohio Self–Insurers' Association.

*Dunlevey, Mahan & Furry, Gary W. Auman, Steven H. Ward* and *Theresa M. Muhic,* urging constitutionality for *amici curiae,* Armco Steel Co., L.P., Dayton Power & Light Company, Gayston Corporation, Super Valu Stores, Inc., Sorg Paper Company, and Dayton Walther Corporation.

SWEENEY, J. The precise issue before us on certification from the federal district court is whether R.C. 4121.80 [1] is unconstitutional in whole or in part

---

1. R.C. 4121.80 provides as follows:

"(A) If injury, occupational disease, or death results to any employee from the intentional tort of his employer, the employee or the dependents of a deceased employee have the right to

receive workers' compensation benefits under Chapter 4123. of the Revised Code and have a cause of action against the employer for an excess of damages over the amount received or receivable under Chapter 4123. of the Revised Code and Section 35 of Article II, Ohio Constitution, or any benefit or amount, the cost of which has been provided or wholly paid for by the employer. The cause of action shall be brought in the county where the injury was sustained or the exposure primarily causing the disease alleged to be contracted occurred. The claim on behalf of the dependents of a deceased employee shall be asserted by the employee's estate. All defenses are preserved for and shall be available to the employer in defending against an action brought under this section. Any action pursuant to the section shall be brought within one year of the employee's death or the date on which the employee knew or through the exercise of reasonable diligence should have known of the injury, disease, or condition, whichever date occurs first. In no event shall any action be brought pursuant to this section more than two years after the occurrence of the act constituting the alleged intentional tort.

"(B) It is declared that enactment of Chapter 4123. of the Revised Code and the establishment of the workers' compensation system is [sic] intended to remove from the common law tort system all disputes between or among employers and employees regarding the compensation to be received for injury or death to an employee except as herein expressly provided, and to establish a system which compensates even though the injury or death of an employee may be caused by his own fault or the fault of a co-employee; that the immunity established in Section 35 of Article II, Ohio Constitution, and sections 4123.74 and 4123.741 of the Revised Code is an essential aspect of Ohio's workers' compensation system; that the intent of the legislature in providing immunity from common law suit is to protect those so immunized from litigation outside the workers' compensation system except as herein expressly provided; and that it is the legislative intent to promote prompt judicial resolution of the question of whether a suit based upon a claim of an intentional tort prosecuted under the asserted authority of this section is or is not an intentional tort and therefore is or is not prohibited by the immunity granted under Section 35 of Article II, Ohio Constitution, and Chapter 4123. of the Revised Code.

"(C) Notwithstanding any other provision of law or rule to the contrary, and consistent with the legislative findings of intent to promote prompt judicial resolution of issues of immunity from litigation under Chapter 4123. of the Revised Code, the court shall dismiss the action:

"(1) Upon motion for summary judgment, if it finds, pursuant to Rule 56 of the Rules of Civil Procedure the facts required to be proved by division (B) of this section do not exist;

"(2) Upon a timely motion for a directed verdict against the plaintiff if after considering all the evidence and every inference legitimately and reasonably raised thereby most favorably to the plaintiff, the court determines that there is not sufficient evidence to find the facts required to be proven.

"(D) In any action brought pursuant to this section, the court is limited to a determination as to whether or not the employer is liable for damages on the basis that the employer committed an intentional tort. If the court determines that the employee or his estate is entitled to an award under this section and that determination has become final, the industrial commission shall, after hearing, determine what amount of damages should be awarded. For that purpose, the commission has original jurisdiction. In making that determination, the commission shall consider the compensation and benefits payable under Chapter 4123. of the Revised Code and the net financial loss to the employee caused by the employer's intentional tort. In no event shall the total amount to be received by the employee or his estate from the intentional tort award be less than fifty per cent of nor more than three times the total compensation receivable pursuant to Chapter 4123. of the Revised Code, but in no event may an award under this section exceed one million dollars. Payments of an award made pursuant to this section shall be from the intentional tort fund. All legal fees, including attorney fees as fixed by the industrial commission, incurred by an employer in defending an action brought pursuant to this section shall be paid by the intentional tort fund.

under the Ohio Constitution. For the reasons that follow, we hold that R.C. 4121.80 exceeds the scope of legislative authority granted to the General Assembly under the Ohio Constitution, and is therefore unconstitutional *in toto*.

I

For some thirteen years following the 1911 enactment of the workers' compensation system, Ohio specifically excepted injuries arising from an employer's "willful act" from the general grant of employer common-law

"(E) There is hereby established an intentional tort fund, which shall be in the custody of the treasurer of state. Every public and private employer, including self-insuring employers, shall pay into the fund annually an amount fixed by the administrator of workers' compensation with approval of the workers' compensation board. The assessment for public and private employers, except for self-insuring employers, shall be based upon the manner of rate computation established by section 4123.29 of the Revised Code. The administrator shall separately calculate each self-insuring employer's assessment in accordance with section 4123.35 of the Revised Code.

"The fund shall be under the control of the administrator and the administrator shall adopt by rule procedures to govern the reception of claims against the fund pursuant to this section and disbursement from the fund.

"(F) The commission shall make rules concerning the payment of attorney fees by claimants and employers in actions brought pursuant to this section and shall protect parties against unfair fees. The commission shall fix the amount of fees in the event of a controversy in respect thereto. The commission and the bureau of workers' compensation shall prominently display in all areas of an office which claimants frequent a notice to the effect that the commission has statutory authority to resolve fee disputes. The commission shall make rules designed to prevent the solicitation of employment in the prosecution or defense of actions brought under this section and may inquire into the amounts of fees charged employers or claimants by attorneys for services in matters relative to actions brought under this section.

"(G) As used in this section:

"(1) 'Intentional tort' is an act committed with the intent to injure another or committed with the belief that the injury is substantially certain to occur.

"Deliberate removal by the employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance is evidence, the presumption of which may be rebutted, of an action committed with the intent to injure another if injury or an occupational disease or condition occurs as a direct result.

" 'Substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer injury, disease, condition, or death.

"(2) 'Employer,' 'employee,' and 'injury' have the same meanings given those terms in section 4123.01 of the Revised Code.

"(H) This section applies to and governs any action based upon a claim that an employer committed an intentional tort against an employee pending in any court on August 22, 1986 and all claims or actions filed on or after that date, notwithstanding any provisions of any prior statute or rule of law of this state."

immunity. See 102 Ohio Laws 524, 529; 103 Ohio Laws 72, 84.[2] While not formally stricken until 1931 (114 Ohio Laws 26, 39), the exception was "repealed by implication" when Section 35, Article II of the Ohio Constitution was amended in 1924. *Mabley & Carew Co. v. Lee* (1934), 129 Ohio St. 69, 1 O.O. 366, 193 N.E. 745, overruled on other grounds in *Triff v. Natl. Bronze & Aluminum Foundry Co.* (1939), 135 Ohio St. 191, 14 O.O. 48, 20 N.E.2d 232.

Section 35, Article II of the Ohio Constitution added the following emphasized language, and provides in relevant part:

"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. *Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays premiums or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease.*"[3] (Emphasis added.) 110 Ohio Laws 631.

---

2. For a concise overview of the history of Ohio law in this area, see Note, *Blankenship v. Cincinnati Milacron Chemical Co.:* Workers' Compensation and the Intentional Tort, a New Direction for Ohio (1987), 12 Cap.U.L.Rev. 286.

3. The rest of Section 35, Article II provides as follows:

"* * * Laws may be passed establishing a board which may be empowered to classify all occupations, according to their degree of hazard, to fix rates of contribution to such fund according to such classification, and to collect, administer and distribute such fund, and to determine all rights of claimants thereto. Such board shall set aside as a separate fund such proportion of the contributions paid by employers as in its judgment may be necessary, not to exceed one per centum thereof in any year, and so as to equalize, insofar as possible, the burden thereof, to be expended by such board in such manner as may be provided by law for the investigation and prevention of industrial accidents and diseases. Such board shall have full power and authority to hear and determine whether or not an injury, disease or death resulted because of the failure of the employer to comply with any specific requirement for the protection of the lives, health or safety of employes, enacted by the General Assembly or in the form of an order adopted by such board, and its decision shall be final; and for the purpose of such investigations and inquiries it may appoint referees. When it is found, upon hearing, that an injury, disease or death resulted because of such failure by the employer, such amount as shall be found to be just, not greater than fifty nor less than fifteen per centum of the maximum award established by law, shall be added by the board, to the amount of the compensation that may be awarded on account of such injury, disease, or death, and paid in like manner as other awards; and, if such compensation is paid from the state fund, the premium of such employer shall be increased in such amount, covering such period of time as may be fixed, as will recoup the state fund in the amount of such additional award, notwithstanding any and all other provisions in this constitution."

In *Triff, supra,* this court detected a gap in the concept of workers' compensation exclusivity and permitted the common-law action of an employee whose employer negligently inflicted his occupational disease. Almost immediately thereafter, the legislature responded to the *Triff* holding by amending G.C. 1465–70 to read:

"Employers who comply * * * shall not be liable to respond in damages at common law or by statute, for *any* injury, disease, or bodily condition, whether such injury, disease or bodily condition is compensable under this act *or not* * * *." (Emphasis added.) 118 Ohio Laws 422, 426.

Harsh results from the statutory amendment soon followed. Prior to the enactment of the foregoing statute, a common-law action was available wherever an injury did not fall within the purview of the Workers' Compensation Act. After the amendment, however, a common-law action was totally foreclosed even if the work-related injury was not compensable. Thus, some claimants were left without any redress whatsoever even in cases of clearly egregious employer behavior. See, *e.g., Bevis v. Armco Steel Corp.* (1951), 156 Ohio St. 295, 46 O.O. 172, 102 N.E.2d 444 (no remedy permitted where the employer knowingly concealed from the employee his progressive occupational disease).

In apparent response to such decisions, the Workers' Compensation Act was amended in 1959, and R.C. 4123.74 (128 Ohio Laws 1334) was enacted which provided in relevant part:

"Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, *received or contracted by any employee in the course of or arising out of his employment,* or for any death resulting from such injury, occupational disease, or bodily condition * * * whether or not * * * compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code." (Emphasis added.) The addition of the above emphasized language effectively reinstated common-law redress where an injury was sustained neither in the course of nor arising out of the employment.

Then, in 1982, this court announced its opinion in *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, and held that a claimant could maintain a common-law action to redress an employer's intentionally inflicted harm. Therein, we held that neither R.C. 4123.74, 4123.741,[4] nor Section 35, Article II of the Ohio Constitu-

---

4. R.C. 4123.741 provides as follows:

tion "expressly extend[ed] the grant of immunity to actions alleging intentional tortious conduct by employers against employees." *Id.* at 612, 23 O.O.3d at 507, 433 N.E.2d at 575–576.

In *Blankenship*, we reasoned that an employer's deliberately injurious act did not arise out of the employment relationship, was not a natural hazard of employment, and therefore, *ipso facto*, fell outside the Workers' Compensation Act.

Then, in *Jones v. VIP Development Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, this court established the parameters of a *Blankenship* intentional tort, and held in the syllabus as follows:

"1.   An intentional tort is an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur.

"2.   The receipt of workers' compensation benefits does not preclude an employee or his representative from pursuing a common-law action for damages against his employer for an intentional tort.

"3.   An employer who has been held liable for an intentional tort is not entitled to a setoff of the award in the amount of workers' compensation benefits received by the employee or his representative."

Subsequent to our decision in *Jones, supra,* R.C. 4121.80 was enacted by the General Assembly to govern actions alleging intentional torts committed by employers against their employees in response to our holdings in *Blankenship* and *Jones. Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St.3d 135, 136–137, 522 N.E.2d 477, 479.

## II

In determining the constitutionality of legislative enactments such as R.C. 4121.80, we begin with the principle that all legislative enactments enjoy a strong presumption of constitutionality. *State, ex rel. Dickman, v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus.

---

"No employee of any employer, as defined in division (B) of section 4123.01 of the Revised Code, shall be liable to respond in damages at common law or by statute for any injury or occupational disease, received or contracted by any other employee of such employer in the course of and arising out of the latter employee's employment, or for any death resulting from such injury or occupational disease, on the condition that such injury, occupational disease, or death is found to be compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code."

Research indicates that since its enactment, R.C. 4121.80 has been the subject of much scholarly debate, both positive [5] and negative.[6] Nevertheless, the cause before us does not require that we explore the wisdom of the General Assembly in its enactment of R.C. 4121.80. As this court duly noted in *State, ex rel. Bishop, v. Bd. of Edn.* (1942), 139 Ohio St. 427, 438, 22 O.O. 494, 498, 40 N.E.2d 913, 919:

" * * * [A]ttention is directed to the universally recognized principle that a court has nothing to do with the policy or wisdom of a statute. That is the exclusive concern of the legislative branch of the government. When the validity of a statute is challenged on constitutional grounds, the sole function of the court is to determine whether it transcends the limits of legislative power."

In the cause *sub judice,* various portions of R.C. 4121.80 are assailed as constitutionally infirm on several grounds. For example, it is argued that Section (D) of R.C. 4121.80 denies the constitutional right to trial by jury, and that it unconstitutionally confers judicial power on the Industrial Commission. Section (F) of the statute is claimed to violate the separation of powers doctrine by giving the Industrial Commission the authority to regulate the practice of law.[7] Notwithstanding the propriety of any of the foregoing

---

5. See 2A Larson, The Law of Workmen's Compensation (1990) 13–47 through 13–68, Section 68.15.

6. See Note, S.307: Ohio's New Workers' Compensation Law—at Least for Now (1986), 12 U. Dayton L.Rev. 489, at 507:

"In its zeal to remedy what it apparently believed to be a potentially disastrous situation, the Ohio Legislature has enacted a bill that will generate litigation for years to come. Whether acting in haste or in response to the pressure exerted by business interests, the result is an act fraught with constitutionally suspect provisions."

See Comment, The New Workers' Compensation Law in Ohio: Senate Bill 307 Was No Accident (1987), 20 Akron U.L.Rev. 491, at 518:

" * * * [I]n enacting the new law the legislature has trammeled the legal and constitutional rights of employees across this state. Moreover, Senate Bill 307 does not clarify the law in Ohio relative to workers' compensation, rather it creates an interpretational quagmire."

See Comment, Intentional Torts by Employers in Ohio, the General Assembly's Solution: Ohio Revised Code Section 4121.80 (1987), 56 U.Cin.L.Rev. 247, at 267:

"The General Assembly has created a confusing and unsettling piece of legislation in section 4121.80. A better solution to the problem would have been to follow the example of a majority of the other states. Most states allow the common law action for an intentional tort by an employer, but severely limit the definition of an intentional tort to a showing of subjective intention to injure."

7. The author of this opinion finds merit in these arguments and agrees with the concurring opinion in the cause *sub judice* that various portions of R.C. 4121.80 are unconstitutional under several provisions of the Ohio Constitution. For example, the "cap on damages" portion of R.C.

arguments, our inquiry is directed to the threshold question of whether R.C. 4121.80, as a whole, transcends the limits of legislative power under the Ohio Constitution.

Petitioners and their supporting *amici curiae* contend that R.C. 4121.80 exceeds the limits of legislative power under both Sections 34 [8] and 35, Article II of the Ohio Constitution. Respondents and their supporting *amici curiae* assert that the statute comports with the goals and purposes of both constitutional provisions.

After careful consideration, we find that R.C. 4121.80 is totally repugnant to Section 34, Article II. Petitioners and their supporting *amici* set forth the persuasive argument that the statute in issue is not a law that furthers the " * * * comfort, health, safety and general welfare of all employes * * *," and we conclude that this argument is well taken. A legislative enactment that attempts to remove a right to a remedy under common law that would otherwise benefit the employee cannot be held to be a law that furthers the " * * * comfort, health, safety and general welfare of all employes * * *." However, R.C. 4121.80 encounters even more constitutional problems when reviewed under the other constitutional provision governing nuances of the workplace, Section 35, Article II. The opening sentence of this constitutional provision states in pertinent part:

*"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment * * *."* (Emphasis added.)

The plain import of this constitutional language indicates that the purpose of workers' compensation is to create a source of compensation for workers injured or killed *in the course of employment.* Section 35, Article II then defines, *inter alia,* the scope and limits of the General Assembly's power in the creation and development of the workers' compensation system. As this court explained in *Blankenship, supra:* "The [Workers' Compensation] Act operates as a balance of mutual compromise between the interests of the employer and the employee whereby employees relinquish their common law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers give up their common law defenses and are protected

---

4121.80(D) clearly violates the right to equal protection found in Section 2, Article I. R.C. 4121.80(D) also violates the right to a trial by jury guaranteed in Section 5, Article I.

8. Section 34, Article II of the Ohio Constitution provides:

"Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employes; and no other provision of the constitution shall impair or limit this power."

from unlimited liability. But the protection afforded by the Act has always been for negligent acts and not for intentional conduct." (Footnotes omitted.) *Id.*, 69 Ohio St.2d at 614, 23 O.O.3d at 508, 433 N.E.2d at 577. See, also, *State, ex rel. Crawford, v. Indus. Comm.* (1924), 110 Ohio St. 271, 274–276, 143 N.E. 574, 575.

However, it is readily apparent that R.C. 4121.80 does not further the purposes of Section 35, Article II, but instead attempts to circumvent them completely. As cogently reasoned by one distinguished member of this court:

" * * * Injuries resulting from an employer's intentional torts, even though committed at the workplace, are utterly outside the scope of the purposes intended to be achieved by Section 35 and by the Act. *Such injuries are totally unrelated to the fact of employment.* When an employer intentionally harms his employee, that act effects a complete breach of the employment relationship, and for purposes of the legal remedy for such an injury, the two parties are not employer and employee, but intentional tortfeasor and victim. If the victim brings an intentional tort suit against the tortfeasor, it is a tort action like any other. The employer has forfeited his status as such and all the attendant protections fall away. The Industrial Commission can have no jurisdiction over such an action. The lawsuit has no bearing upon any question relating to employment. The jurisdiction of the commission is limited to the matters delineated in Section 35, Article II. The General Assembly has no power to confer jurisdiction on the commission except as authorized by that constitutional provision. See *Crawford, supra* [110 Ohio St.], at 276, 143 N.E. at 575–576. Section 35 concerns itself solely with compensation for injuries arising from employment. R.C. 4121.80 concerns itself solely with injuries which by their nature have no connection whatsoever with the fact of employment. In enacting R.C. 4121.80, the General Assembly has exceeded the scope of the authority granted to it by the constitutional amendment, and the statute is, therefore, void as an improper exercise of legislative power." (Emphasis *sic.*) *Taylor v. Academy Iron & Metal Co.* (1988), 36 Ohio St.3d 149, at 162, 522 N.E.2d 464, at 476 (Douglas, J., dissenting).

We hereby adopt the foregoing analysis and reiterate our firm belief that the legislature cannot, consistent with Section 35, Article II, enact legislation governing intentional torts that occur within the employment relationship, because such intentional tortious conduct will always take place outside that relationship. *Blankenship, supra.* Since we find that Section 35, Article II authorizes only enactment of laws encompassing death, injuries or occupational disease occasioned within the employment relationship, R.C. 4121.80 cannot logically withstand constitutional scrutiny, inasmuch as it attempts to regulate an area that is beyond the reach of its constitutional empowerment.

As brought out from the bench during oral argument of this case, it appears that the General Assembly was amply cognizant of the fact that R.C. 4121.80 exceeded the scope of its legislative power under Section 35, Article II, given the language of section (A) of the statute which states in relevant part that: " * * * the employee * * * [has] the right to receive workers' compensation benefits * * * and [has] a cause of action against the employer for an *excess of damages over the amount received or receivable under * * * Section 35 of Article II, Ohio Constitution * * *."* (Emphasis added.) In our view, such language cannot be lightly dismissed as merely a product of inartful draftsmanship; rather, we find that it exemplifies the intent of the General Assembly to enact something beyond that which is permitted by Section 35, Article II.

### III

Based on all the foregoing, we reaffirm our prior holding in *Blankenship, supra,* and hold that a cause of action brought by an employee alleging intentional tort by the employer in the workplace is not preempted by Section 35, Article II of the Ohio Constitution, or by R.C. 4123.74 and 4123.741. While such a cause of action contemplates redress of tortious conduct that occurs during the course of employment, an intentional tort alleged in this context necessarily occurs outside the employment relationship.

We further hold that R.C. 4121.80 exceeds and conflicts with the legislative authority granted to the General Assembly pursuant to Sections 34 and 35, Article II of the Ohio Constitution, and is therefore unconstitutional *in toto.*

*Judgment accordingly.*

DOUGLAS and RESNICK, JJ., concur.

H. BROWN, J., concurs in the syllabus and in the judgment.

MOYER, C.J., HOLMES and WRIGHT, JJ., dissent.

DOUGLAS, J., concurring. I concur in the well-reasoned opinion of the majority. Justice Sweeney has, in rapid fashion, gone to the heart of the issue. Clearly, Section 35, Article II of the Ohio Constitution does not permit legislation of the ilk of R.C. 4121.80.

I write separately because in addition to those reasons expressed by the majority, I find R.C. 4121.80, and its various parts, to be unconstitutional as being in violation of equal protection, Section 2, Article I; right to trial by jury, Section 5, Article I; and open courts, Section 16, Article I. My reasoning on each subject can be found in greater detail in Justice Sweeney's opinion concurring in part and dissenting in part in *Morris v. Savoy* (1991), 61 Ohio

St.3d 684, 700, 576 N.E.2d 765, 777, which, where pertinent, I incorporate herein.

R.C. 4121.80(D) places a "cap" on damages that can be recovered by an injured employee from an offending employer. Solely because a victim is an "employee," such victim is treated differently from other victims of intentional torts. This creates a special category of intentional tort victims within the class of all victims of intentional torts and to meet constitutional muster, such "[l]egislation must apply alike to all persons within a class, and reasonable grounds must exist for making a distinction between those within and those without a designated class. * * * " *Porter v. Oberlin* (1965), 1 Ohio St.2d 143, 30 O.O.2d 491, 205 N.E.2d 363, paragraph two of the syllabus. " * * * Equal protection of the laws requires the existence of reasonable grounds for making a distinction between those within and those outside a designated class. * * * " *State, ex rel. Nyitray, v. Indus. Comm.* (1983), 2 Ohio St.3d 173, 175, 2 OBR 715, 717, 443 N.E.2d 962, 964. It is difficult to see what legitimate interest the state has (and I find none) in treating victims of intentional torts by employers differently from all other intentional tort victims.

Since there are no reasonable grounds for making a distinction, R.C. 4121.80(D) is violative of the right of equal protection as guaranteed in Section 2, Article I of the Ohio Constitution and is, thus, unconstitutional.

While it is arguable that the "directed verdict" language in R.C. 4121.-80(C)(2) can be used to secure a jury trial, notwithstanding the use of the word "court" in R.C. 4121.80(D) (see *Miller v. Wikel Mfg. Co.* [1989], 46 Ohio St.3d 76, 81, 545 N.E.2d 76, 81 [Douglas, J., concurring in part and dissenting in part] ), it is absolutely clear that R.C. 4121.80(D) *does* abrogate the right to trial by jury as to the assessment of any damages. Damage determination is delegated to the Industrial Commission. Thus, the General Assembly has ignored Section 5, Article I of the Ohio Constitution, which, in part, provides that "[t]he right of trial by jury shall be inviolate. * * * " It is hard to think of language that is any more absolute—and yet the language and right have been summarily ignored by the damage assessment provision of R.C. 4121.-80(D). If this encroachment is permitted to survive constitutional attack, what is next? The time has come to draw the line. I would do so by saying that R.C. 4121.80, and specifically R.C. 4121.80(D), violate Section 5, Article I of the Ohio Constitution and are, accordingly, unconstitutional. See, also, R.C. 4121.80(B).

It would be well for us to recall the First Inaugural Address, in March 1801, of President Thomas Jefferson, when he said, in part, that "[e]qual and exact justice to all men * * *; freedom of religion; freedom of the press; * * * *and*

*trial by juries impartially selected*—these principles form the bright constellation which has gone before us, and guided our steps through an age of revolution and reformation. The wisdom of our sages and the blood of our heroes have been devoted to their attainment. They should be the creed of our political faith * * *; *and should we wander from them in moments of error or alarm, let us hasten to retrace our steps and to regain the road which alone leads to peace, liberty, and safety.*" (Emphasis added.) The Writings of Thomas Jefferson (Padover Ed.1967) 274.

Will we be part of dimming that "bright constellation"? Will we, on our watch, permit the sacred right of trial by jury to be tarnished and weakened? I would hope not and, certainly, I could never be part of any such movement.

Time and again in recent years we have been called upon to review and apply Section 16, Article I of the Ohio Constitution. The provision provides that all courts shall be open and *every* person (not just non-employees) shall have access to the court to seek a remedy for injury to his or her land, goods, person or reputation. Pertinent parts of R.C. 4121.80 take away this right and, therefore, without needing to say anything further, R.C. 4121.80 is also unconstitutional as being in violation of Section 16, Article I of the Ohio Constitution. See, *e.g., Mominee v. Scherbarth* (1986), 28 Ohio St.3d 270, 28 OBR 346, 503 N.E.2d 717; *Hardy v. VerMeulen* (1987), 32 Ohio St.3d 45, 512 N.E.2d 626; and *Gaines v. Pre–Term Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 514 N.E.2d 709. (The remedy, as we said in *Gaines,* must be "meaningful." If R.C. 4121.80 provides any remedy for victims of intentional torts, that remedy certainly is not meaningful.)

Pages and pages could be written on the "substantially certain" definition found in R.C. 4121.80(G)(1). Rather than do so, I refer any interested reader to my dissenting opinion in *Taylor v. Academy Iron & Metal Co.* (1988), 36 Ohio St.3d 149, 155, 522 N.E.2d 464, 470. Suffice it to say that for any civil liability to attach, the statute requires that an employer must have *deliberately intended* to cause injury or death of an employee. If these words are read slowly and with understanding, their impact becomes obvious—and alarming. I just cannot subscribe to the thought that the General Assembly meant that before an intentional tort in the workplace can be established, the perpetrator has to be guilty of a criminal assault or murder. Yet this is what the words say and there is no room for any other interpretation. Such legislation cannot be in keeping with substantive due process and is, therefore, unconstitutional.

Finally, the rambling dissent of Justice Holmes needs some comment. He describes the majority opinion as "judicial flummery." Let us analyze the dissent and see what it really says and then we can determine from whence the real flummery flows.

The dissent, playing a very old tune, once again attacks the case of *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572. This is, of course, the same *Blankenship* case that Justice Holmes cited as authority in his ever confusing (see *Fyffe v. Jeno's, Inc.* [1991], 59 Ohio St.3d 115, 570 N.E.2d 1108) majority opinion in *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489. There is much that could be said about his "exclusivity" and Section 35, Article II of the Ohio Constitution and R.C. 4123.74 arguments but that would only be plowing ground previously (and often) plowed. The more interesting point is the complete lack of understanding exhibited by the dissent as to the theory of *Blankenship* (and even *Van Fossen*) regarding an intentional tort arising out of the employment context.

Now let us see if we can make any sense at all out of the dissent. Justice Holmes says that if the injury (tort) occurs while the victim is working, then there can be no cause of action or recovery except through workers' compensation. His authority for this is Section 35, Article II of the Ohio Constitution and R.C. 4123.74. Taking his proposition to its ultimate extreme, that means that if an employee is working in a shop at a machine and his employer comes up to the employee and beats the employee over the head with a two-by-four, thereby rendering the employee senseless and permanently injured, that employee is limited to the workers' compensation system for redress of his injuries because the attack occurred while he was at work. This is, of course, ludicrous and that is why there is a *Blankenship* case and a dissent in *Taylor v. Academy Iron & Metal Co.* (1988), 36 Ohio St.3d 149, 522 N.E.2d 464.

Yet, Justice Holmes in his dissent says that it is flummery to provide the employee with a cause of action for intentional tort on the basis that the employment relationship agreement between the employer and employee never contemplated that an employer would have immunity for the commission of an intentional tort against the employee. In fact, the dissent says, " * * * [w]hat absurdities the majority has embraced by relying on the *Taylor* dissent, and adopting the theory espoused in *Blankenship* that an intentional tort does not arise out of employment but 'necessarily occurs outside the employment relationship.' * * * "

Therein lies the problem. If Justice Holmes is correct that such injuries arise out of the employment relationship, then any recovery outside the workers' compensation system is barred by Section 35, Article II and R.C. 4123.74. But, if he accepts the *Blankenship* theory, as he did in *Van Fossen*, then necessarily the injury must have occurred during the course of employment but outside the agreed-to employment relationship. This is a distinction that he, for some reason, has never been able to grasp—that is, that he cannot

have it both ways! Thus, when he describes my dissent in *Taylor* as being "erratically philosophized," he does so, I submit, on the basis that he must resort to diatribe because his position cannot be rationally or legally supported and is the real mumbo jumbo and mummery in these cases.

For the reasons expressed by the majority and for those expressed above, I concur.

HERBERT R. BROWN, J., concurring. I concur in the syllabus, the judgment and much of the reasoning of the majority opinion written by Justice Sweeney. I write separately to fill in what I believe to be a gap, and to clarify the state of Ohio's employer intentional tort law.

I

*R.C. 4121.80 and the Police Power*

As Justice Sweeney correctly states in the majority opinion, R.C. 4121.80 is not authorized by Sections 34 and 35, Article II of the Ohio Constitution.

Section 34, Article II was added to the Ohio Constitution in 1912. This section empowered the General Assembly to regulate the employment relationship without running afoul of the now-obsolete judicial doctrine of "economic substantive due process." See, generally, 2 Proceedings and Debates of the Constitutional Convention of the State of Ohio (1913) 1331, 1334–1335. As we recognized in *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 612–613, 23 O.O.3d 504, 507–508, 433 N.E.2d 572, 576, an employer's intentional tort against his employee is not an act which takes place within the employment relationship. Thus, this section of the Constitution does not apply to employer intentional torts because they are not part of the employment relationship.

Section 35, Article II created the workers' compensation system. Its purpose is to compensate employees for their workplace injuries by substituting an administrative proceeding for a negligence action brought in the civil courts—where the doctrines of contributory negligence and assumption of the risk and the fellow-servant rule made it all but impossible for the injured worker to recover. See, generally, Prosser & Keeton, The Law of Torts (5 Ed.1984) 568–577, Section 80. It has been universally recognized, either by statute or judicial interpretation, that an exception to the exclusivity of workers' compensation exists for the employer's intentional wrongs. See, *e.g.*, *Blankenship, supra; Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 111–112, 522 N.E.2d 489, 500; *Serna v. Statewide Contractors, Inc.* (1967), 6 Ariz.App. 12, 429 P.2d 504; *Mingachos v. CBS, Inc.* (1985), 196 Conn. 91, 491 A.2d 368; *Sullivan v. Liberty Mut. Ins. Co.* (Fla.App.1979), 367

So.2d 658, certiorari denied (Fla.1979), 378 So.2d 350; *Collier v. Wagner Castings Co.* (1980), 81 Ill.2d 229, 41 Ill.Dec. 776, 408 N.E.2d 198; *Hildebrandt v. Whirlpool Corp.* (Minn.1985), 364 N.W.2d 394; *Noonan v. Spring Creek Forest Products, Inc.* (1985), 216 Mont. 221, 700 P.2d 623; *Millison v. E.I. duPont de Nemours & Co.* (1985), 101 N.J. 161, 501 A.2d 505; *Crespi v. Ihrig* (1984), 99 App.Div.2d 717, 472 N.Y.Supp.2d 324, affirmed (1984), 63 N.Y.2d 716, 480 N.Y.Supp.2d 205, 469 N.E.2d 526; *Kittell v. Vermont Weatherboard, Inc.* (1980), 138 Vt. 439, 417 A.2d 926; *Mandolidis v. Elkins Industries, Inc.* (1978), 161 W.Va. 695, 246 S.E.2d 907; Prosser, *supra,* at 576–577, Section 80. Intentional torts do not, therefore, come within the scope of Section 35, Article II.

This does not mean, however, that the General Assembly has *no* power to modify intentional tort law by legislation. The legislature may do so in the exercise of its police power. Cf. *State, ex rel. Yaple, v. Creamer* (1912), 85 Ohio St. 349, 97 N.E. 602 (enactment of Workers' Compensation Act prior to the adoption of Section 35, Article II was a valid exercise of the police power). However, while the General Assembly's exercise of the powers granted by Sections 34 and 35 of Article II is not limited by any other provision of the Ohio Constitution, see, *e.g., Rocky River v. State Emp. Relations Bd.* (1989), 43 Ohio St.3d 1, 13, 539 N.E.2d 103, 114 (Section 34); *State, ex rel. Boswell, v. Indus. Comm.* (1932), 125 Ohio St. 341, 181 N.E. 476, paragraph two of the syllabus (Section 35), its exercise of the police power is. Thus, it is necessary to go beyond the analysis in the majority opinion and test the constitutionality of R.C. 4121.80 with reference to provisions of the Constitution other than Sections 34 and 35 of Article II.

In such an analysis, R.C. 4121.80 fails in two important respects. First, it denies the right to a trial by jury guaranteed by Section 5, Article I of the Ohio Constitution. That provision of our Bill of Rights preserves the civil jury trial in those causes of action where it existed at the time the Constitution of Ohio, 1851 was adopted. *Hoops v. United Tel. Co. of Ohio* (1990), 50 Ohio St.3d 97, 553 N.E.2d 252; *State, ex rel. Kear, v. Court of Common Pleas* (1981), 67 Ohio St.2d 189, 21 O.O.3d 118, 423 N.E.2d 427; *Pokorny v. Local No. 310* (1974), 38 Ohio St.2d 177, 180, 67 O.O.2d 195, 196, 311 N.E.2d 866, 869; *Belding v. State, ex rel. Heifner* (1929), 121 Ohio St. 393, 169 N.E. 301. Employer intentional tort actions are nothing but a special case of the common-law tort of battery. *Bishop v. Hybud Equip. Corp.* (1988), 42 Ohio App.3d 55, 58, 536 N.E.2d 694, 697. The action for battery has, of course, been long recognized in Anglo–American law, see Prosser, *supra,* at 29–30, Section 6, and has always been tried to a jury on both liability and damage issues. Thus, Section 5, Article I guarantees a trial by jury in employer intentional tort actions.

R.C. 4121.80 contains two provisions which violate Section 5, Article I of the Constitution. Division (D) provides that damages shall be determined by the Industrial Commission rather than a civil jury. By its use of the term "court," Division (C) appears to also remove the liability determination from the jury. See Comment, Intentional Torts by Employers in Ohio, the General Assembly's Solution: Ohio Revised Code Section 4121.80 (1987), 56 U.Cin. L.Rev. 247, 265. As this court and at least three of our lower courts have noted, these provisions impair the right to trial by jury. *Kneisley v. Lattimer–Stevens Co.* (1988), 40 Ohio St.3d 354, 356–357, 533 N.E.2d 743, 746 (R.C. 4121.80[D] may not be applied retroactively because it destroys the right to a jury trial); *Bishop, supra,* 42 Ohio App.3d at 57–59, 536 N.E.2d at 696–698 (avoiding unconstitutionality by construing R.C. 4121.80[C] to require a jury determination of liability); *Schneider v. Jefferson Smurfit Corp.* (1988), 42 Ohio App.3d 53, 55, 536 N.E.2d 691, 694 (R.C. 4121.80[D] may not be applied retroactively because it eliminates the substantive right to a trial by jury); *Palcich v. Mar–Bal, Inc.* (Dec. 24, 1987), Geauga App. No. 1394, unreported, 1987 WL 31715 (R.C. 4121.80[D] unconstitutionally denies right to trial by jury on damage issue). Therefore, they are unconstitutional.

R.C. 4121.80(D) also contains a $1 million cap on damages. Today we also invalidate a cap on noneconomic damages for medical negligence on the ground that it lacked a rational basis. *Morris v. Savoy* (1991), 61 Ohio St.3d 684, 576 N.E.2d 765. A cap on compensatory damages resulting from intentional conduct needs at least as strict a scrutiny as a cap on damages resulting from negligent conduct.[9] The intentional tort cap would limit liability for wrongful conduct over which the tortfeasor has control.

Accordingly, and for these additional reasons, I join in the syllabus and judgment.

## II

### *The Current Status of Ohio's Employer Intentional Tort Law*

R.C. 4121.80 was a legislative reaction to our opinion in *Jones v. VIP Development Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046. As we later recognized, some of the expansive language used in *Jones* led to negligence actions being filed and litigated as "intentional torts." *Van*

---

**9.** It should also be noted that courts in several of our sister states have held that malpractice damage caps violate equal protection guarantees. See, *e.g., Carson v. Maurer* (1980), 120 N.H. 925, 424 A.2d 825; *Arneson v. Olson* (N.D.1978), 270 N.W.2d 125; *Wright v. Cent. DuPage Hosp. Assn.* (1976), 63 Ill.2d 313, 347 N.E.2d 736 (damage cap violates constitutional prohibition against special privileges). These cases suggest that even if R.C. 4121.80(D) could survive the rational basis test, it would probably fail on equal protection grounds.

*Fossen, supra,* 36 Ohio St.3d at 115, 522 N.E.2d at 502–503 (describing difficulties resulting from the *Jones* definition); *id.* at 122–123, 522 N.E.2d at 509–510 (Douglas, J., dissenting) (same). This trend reached the limit of absurdity in *Van Fossen,* where we were presented with an employer "intentional" tort claim based on a simple slip and fall. *Id.* at 118, 522 N.E.2d at 506 (H. Brown, J., concurring).

In response, this court, in a series of cases beginning with *Van Fossen* and culminating in *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, has resolved the difficulties caused by *Jones* and returned the intentional tort exception to its proper scope. Under these cases, workers' compensation is the exclusive remedy for the vast majority of workplace injuries. Employers are liable at common law only when they either intend to harm their employees or require employees to work under conditions which the employer knows are substantially certain to cause injury. *Fyffe, supra,* paragraph one of the syllabus.

Given this body of case law, the fears of some (apparently shared by some of the dissenting justices) that today's decision will destroy Ohio's business climate and subject employers to unlimited and unpredictable exposure to liability are not well founded.[10] It is time to put an end to the posturing that has accompanied, and continues to accompany, the judicial review of intentional torts in the workplace.

HOLMES, J., dissenting. Judicial flummery surrounding the so-called employer "intentional tort" continues with this majority opinion—now striking down R.C. 4121.80, legislation enacted by Am.Sub.S.B. No. 307 to specifically define, and to compensate employees for, injuries caused by intentional torts as defined in this new section of law.

I feel certain that the General Assembly will be shocked to learn through this majority opinion that it has exceeded the authority specifically granted by

---

**10.** There always will be the danger that an employer may incur expenses defending against a frivolous and unfounded "intentional tort" claim. However, the risk that one could be named as the defendant in a frivolous lawsuit is not unique to the employment relationship. See, *e.g., Border City S & L Assn. v. Moan* (1984), 15 Ohio St.3d 65, 15 OBR 159, 472 N.E.2d 350 (bank sued by corporations); *Newman v. Al Castrucci Ford Sales, Inc.* (1988), 54 Ohio App.3d 166, 561 N.E.2d 1001 (auto dealer sued by customer); *Strauch v. Gross* (1983), 10 Ohio App.3d 303, 10 OBR 507, 462 N.E.2d 433 (attorney sued by opponent of former client). Further, I suspect that the only way to ensure that no one will be forced to defend a frivolous lawsuit would be to eliminate the Ohio civil law system entirely.

When frivolous intentional tort claims are brought, they can be quickly disposed of by the trial court, using the substantive law established by *Fyffe, supra,* and the summary judgment standards we most recently discussed in *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099. Like any other civil defendant, the employer has redress, where applicable, under Civ.R. 11 and the court's inherent power to impose sanctions.

Article II, Sections 34 and 35 of the Ohio Constitution. I also anticipate widespread puzzlement among the bench, bar, the business community, and the citizenry at large at the pronouncement of the majority that an intentional tort as committed by an employer against an employee, during the course of employment, "necessarily occurs outside the employment relationship." With these pronouncements of the majority I am in total disagreement, some of which disagreement I have previously expressed by way of dissent in *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 621–622, 23 O.O.3d 504, 513, 433 N.E.2d 572, 581–582, and *Jones v. VIP Development Co.* (1984), 15 Ohio St.3d 90, 103–107, 15 OBR 246, 257–261, 472 N.E.2d 1046, 1058–1060, which opinions espoused the "intentional tort" theory in Ohio law.

A historical review of the Ohio constitutional sections, legislation, and this court's opinions in this area of workers' compensation law readily shows the supremacy of the constitutionally granted powers of the Ohio General Assembly in this area of statewide concern. Today the majority of this court has gone far afield in its interpretation of both the legislative powers granted to the General Assembly and the statutes enacted thereunder relative to workers' compensation.

## I

### History

Historically, a worker who had been injured in the course of his employment availed himself of an action at common law against his employer, and in order to recover his damages it was necessary to allege and prove fault upon the part of his employer. The employer in such an action had available the common-law defenses of contributory negligence, the fellow-servant rule and assumption of risk.

This system of litigation for obtaining compensation for work-related injuries became widely recognized as not meeting the needs of injured workers. In Ohio, a great number of such injuries were reportedly going uncompensated because of the legal defenses available to the employer. In response, the General Assembly, in 1911, enacted the first law pertaining to compensation for industrial injuries. See 102 Ohio Laws 524.

This original workers' compensation law was enacted without specific constitutional authority. It was followed, however, by the adoption of the constitutional amendment, Section 35, Article II, in 1912, which became the fount for all subsequent workers' compensation laws. This constitutional provision specifically empowered the General Assembly to provide for the compensation of injuries or occupational diseases "occasioned in the course of

such workmen's employment," and to establish compulsory contribution by employers into a statewide fund in order to pay such compensation.

The original workers' compensation law provided for an employee's election of remedies between its benefits and a common-law action against his employer when the injury resulted from a "wilful act" committed by the employer, or by the failure of the employer to comply with lawful requirements as to the safety of the employees. Former G.C. 1465–61, S.B. No. 127, Section 21–2, 102 Ohio Laws 524, 529. The section contained no definition of the term "willful act." It appears from the Ohio Reports that there was considerable case law activity against employers for recovery based upon their willful acts. In 1914, the General Assembly amended this statute, which had been recodified at G.C. 1465–76, by defining "wilful act" as an act "done knowingly and purposely with the direct object of injuring another." 104 Ohio Laws 194.

This court had occasion to take notice of the fact that the willful-act exception to the workers' compensation law had occasioned litigation that constituted an "insidious attack" on this Act, and that the expansion of this litigation had the effect of weakening the structure of the workers' compensation law. *Patten v. Aluminum Castings Co.* (1922), 105 Ohio St. 1, 11, 136 N.E. 426, 429.

The most pertinent expression of public policy on this subject of exclusivity of the Act was the amendment to Section 35, Article II, adopted in 1923, effective January 1, 1924, which specifically granted immunity to complying employers from any common-law remedies for injuries suffered by employees. In pertinent part, the section was amended to read, as it still does today:

" * * * Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law * * * *shall not be liable to respond in damages at common law* or by statute for such death, injuries or occupational disease." (Emphasis added.)

Although G.C. 1465–76 was not repealed by the General Assembly until 1931 (114 Ohio Laws 26, 39), this court found that it had been "repealed by implication" by the constitutional amendment in 1924. *Mabley & Carew Co. v. Lee* (1934), 129 Ohio St. 69, 1 O.O. 366, 193 N.E. 745.

The legislature has, in various forms over the years, provided for the exclusivity of the Act. G.C. 1465–70 (1913), 103 Ohio Laws 72, 81, provided in pertinent part:

"Employers who comply with the provisions of * * * [G.C. 1465–69] shall not be liable to respond in damages at common law or by statute, save as

hereinafter provided, for injury or death of any employee, wherever occurring * * * *."

In *Triff v. Natl. Bronze & Aluminum Foundry Co.* (1939), 135 Ohio St. 191, 14 O.O. 48, 20 N.E.2d 232, this court held that the right of action of an employee for the negligence of his employer directly resulting in a noncompensable occupational disease had not been taken away by Section 35, Article II of the Constitution of Ohio, or by G.C. 1465–70.

Shortly after the *Triff* opinion was announced, the General Assembly amended G.C. 1465–70 to further provide for the Act's exclusivity, whether or not the injury, occupational disease, bodily condition, or death was compensable under the Act. See 118 Ohio Laws 422, 426–427. Similar provisions are now found in current R.C. 4123.74, which states, in pertinent part:

" * * * [E]mployers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, whether or not such injury, occupational disease, bodily condition, or death is compensable under sections 4123.01 to 4123.94 of the Revised Code."

Even though Section 35, Article II of the Ohio Constitution and R.C. 4123.74 are crystal clear on their faces in light of the legislative and constitutional history, a majority of this court cast them aside in *Blankenship* without regard to their expressed public policy. There, in the context of a motion to dismiss under Civ.R. 12(B)(1) and (6), the court allowed a common-law tort action to be brought for what was termed an "intentional tort," with the court offering absolutely no definition of the term. Subsequently, the court went considerably further afield in the cases consolidated under the name of *Jones, supra.* In that case, the court declared that common-law remedies are available to employees for a work-related injury where the injury was "committed with the belief that such injury is substantially certain to occur." *Id.* at paragraph one of the syllabus. Further, the court determined that common-law remedies could be pursued even though the employee had applied for, and had received, benefits from the Workers' Compensation Fund. *Id.* at paragraph two of the syllabus. This latter holding of course inherently recognized that the injury had indeed been occasioned within the employment relationship.

The result of *Blankenship* and *Jones* was a sharp increase in litigation in this field and substantial uncertainty as to what conduct would give rise to an intentional tort claim. Those opinions also created other questions, such as whether this conduct was insurable, and whether a person could doubly

recover by way of both workers' compensation benefits and damages for intentional tort, among other problems.

One of the major problems presented to those within the judicial process by *Blankenship* and *Jones* was applying their law to the broad spectrum of fact situations that was presented to trial courts under motions for summary judgment.

In response to increased intentional tort complaints being filed across the state, concern expressed by employer and business organizations, and legislative discussion and study, the General Assembly in 1986, with considerable bipartisan support,[11] enacted Am.Sub.S.B. No. 307, effective August 22, 1986, including R.C. 4121.80, which provided a comprehensive means for the adjudication and compensation of intentional tort claims.

The General Assembly's response by way of R.C. 4121.80 to this court's opinions in *Blankenship, Jones,* and others, contained a statement that the Workers' Compensation Act was intended to be the exclusive remedy for all deaths, injury and occupational disease occasioned in the course of employment.[12] Having thus expressly reaffirmed employer immunity from common-law tort actions that was conferred by the Constitution and statute, the

---

11. Bills were introduced in both houses of the Ohio General Assembly and after much study and debate in committee the final bill, Am.Sub.S.B. No. 307, was passed in the House by a vote of 74 to 22, and in the Senate by a vote of 21 to 12. Indicating the bipartisan nature of this bill, statements were made by its major sponsors, Republican Senator Richard H. Finan and Democratic Representative Cliff Skeen, in forewords to Harris, Ohio Workers' Compensation Act (1986). A portion of the "Foreword by Representative Skeen," dated June 30, 1986, is as follows: "How close Senator Finan and I come to achieving our goals will be decided through the processing of future claims and in the courts. My personal opinion is that both management and labor have overreacted to the final bill. It is neither as good for employers nor as bad for employees as the two sides are stating in public."

12. R.C. 4121.80(B) provides as follows:
"It is declared that enactment of Chapter 4123. of the Revised Code and the establishment of the workers' compensation system is [*sic*] intended to remove from the common law tort system all disputes between or among employers and employees regarding the compensation to be received for injury or death to an employee except as herein expressly provided, and to establish a system which compensates even though the injury or death of an employee may be caused by his own fault or the fault of a co-employee; that the immunity established in Section 35 of Article II, Ohio Constitution, and sections 4123.74 and 4123.741 of the Revised Code is an essential aspect of Ohio's workers' compensation system; that the intent of the legislature in providing immunity from common law suit is to protect those so immunized from litigation outside the workers' compensation system except as herein expressly provided; and that it is the legislative intent to promote prompt judicial resolution of the question of whether a suit based upon a claim of an intentional tort prosecuted under the asserted authority of this section is or is not an intentional tort and therefore is or is not prohibited by the immunity granted under Section 35 of Article II, Ohio Constitution, and Chapter 4123. of the Revised Code."

General Assembly created, in R.C. 4121.80, a supplemental remedy within the Workers' Compensation Act for "intentional torts."

This court had occasion to construe one part of R.C. 4121.80, that being subsection (H), which provided that R.C. 4121.80 would apply to any intentional tort action pending in any court on the effective date of the Act. The court held that subsection to be unconstitutionally retroactive contrary to Section 28, Article II of the Ohio Constitution. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489. Having determined that R.C. 4121.80 could apply only prospectively, a majority of the court concluded that in the interim some stabilization of the standards for the determination of an intentional tort was needed. Accordingly, syllabus law was set forth in *Van Fossen* with the aim of assisting trial courts and counsel, particularly in resolving Civ.R. 56 motions for summary judgment. See, also, *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108.

As can be readily gleaned from the above historical analysis of workers' compensation law in Ohio, there has been much legislative activity, both before and after the constitutional amendment's specifically authorizing the General Assembly to set forth the public policy of this state in workers' compensation matters. In support of the legislative authority in this field, in an early case, prior to the adoption of Section 35, Article II of the Ohio Constitution, this court upheld the original workers' compensation law as a valid exercise of the police power in *State, ex rel. Yaple, v. Creamer* (1912), 85 Ohio St. 349, 97 N.E. 602, holding that it is the right and duty of the state, acting through the legislature, to provide for the common welfare of the governed. In like manner, the enactment of R.C. 4121.80, even in the absence of specific authority in Section 35, Article II, was a proper exercise of the general legislative power given to the General Assembly by Section 1, Article II of the Ohio Constitution.

## II

### Section 34, Article II

The majority here adopts the position of the petitioners and their supporting *amici* that R.C. 4121.80 violates Sections 34 and 35, Article II of the Ohio Constitution. The majority holds that R.C. 4121.80 is "totally repugnant" to Section 34, Article II, based upon the conclusion that "[a] legislative enactment that attempts to remove a right to a remedy under common law that would otherwise benefit the employee cannot be held to be a law that furthers the ' * * * comfort, health, safety and general welfare of all employes * * * ,'"

The citizens of Ohio have given the General Assembly the power to enact laws concerning the compensation for injuries received within the workplace. The legislature, disturbed by the opinions of this court concerning what constituted, and the compensation for, intentional torts, enacted R.C. 4121.80, which again created a statutory recognition of workplace intentional torts, and established a procedure for the efficient adjudication of an employee's claim that he or she was the victim of a workplace intentional tort and for funding the recovery. Such legislation certainly serves the goal of "providing for the comfort, health, safety and general welfare of all employes."

As noted previously, employer immunity from common-law actions for intentional tort was part of the original trade-off in the workers' compensation plan. In like manner, the enactment of R.C. 4121.80 provided additional trade-off benefits for the claimant. One of the most important of these benefits was that the claimant was assured of a solvent fund from which to recover an award.[13] The establishment of a stable source of payment is a considerable added benefit to claimants who allege an employer intentional tort.

Also, another benefit to employees within Am.Sub.S.B. No. 307 is R.C. 4121.47, which pertains to violations of specific safety rules. This section authorizes civil penalties up to $50,000 for violations of safety rules, the funds being deposited in the occupational safety loan program fund established per R.C. 4121.48. This safety provision clearly should be regarded as a benefit to Ohio workers, and a *quid pro quo* for some adverse effects of R.C. 4121.80 on employees.

In like manner, R.C. 4121.80(G)[14] provides another *quid pro quo* to employees by providing a presumption of intent to injure where there is a deliberate

13. This court has recently reviewed a matter where the claimant, having obtained a $425,000 judgment against his employer in a common-law action, attempted to obtain payment from the intentional tort fund established by R.C. 4121.80 rather than pursue the presumably more difficult collection from the employer. *State, ex rel. Carpenter, v. Indus. Comm.* (1990), 50 Ohio St.3d 85, 522 N.E.2d 645.

14. R.C. 4121.80(G) provides as follows:
"As used in this section:
"(1) 'Intentional tort' is an act committed with the intent to injure another or committed with the belief that the injury is substantially certain to occur.
"Deliberate removal by the employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance is evidence, the presumption of which may be rebutted, of an act committed with the intent to injure another if injury or an occupational disease or condition occurs as a direct result.
" 'Substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer injury, disease, condition, or death.
"(2) 'Employer,' 'employee,' and 'injury' have the same meanings given those terms in section 4123.01 of the Revised Code."

removal by the employer of an equipment safety guard or misrepresentation of a toxic or hazardous substance.

While petitioners and *amici* may disagree with whether the goal of protecting workers is achieved, or whether R.C. 4121.80 is the most appropriate or best calculated means of achieving the goal, disagreement, no matter how earnest, is not a ground for a constitutional challenge to R.C. 4121.80. In *State, ex rel. Yaple, v. Creamer, supra*, the creation of a state insurance fund for the benefit of injured employees and the dependents of killed employees was held to be a constitutional exercise of legislative power. This court wrote:

" * * * Whether the plan adopted [the creation of a state insurance fund to compensate injured employees and the dependents of killed employees] is the most appropriate or best calculated to accomplish those objects [serving the public good] are matters with which the court is not concerned and the law should not be held to be invalid unless clearly in violation of some provision of the constitution." *Id.*, 85 Ohio St. at 391–392, 97 N.E. at 604.

Also, in *Central Ohio Transit Auth. v. Transport Workers Union of America, Local 208* (1988), 37 Ohio St.3d 56, 524 N.E.2d 151, it was argued that R.C. 4117.16(A) made an unconstitutional delegation of authority to the State Employment Relations Board. In rejecting that argument and finding R.C. 4117.16(A) to be constitutional, the court commented:

"The Ohio Constitution contains a broad grant of authority to the legislature to provide for the 'comfort, health, safety and general welfare of all employes,' and further declares that no other constitutional provision shall impair or limit that authority. Section 34, Article II, Ohio Constitution. By refusing to interfere in the legislature's exercise of its prerogative in this area, this court upholds the doctrine of separation of powers by preserving the integrity of the legislative function. It is also for this reason that courts are required to presume the constitutionality of legislative enactments. * * * This presumption, which can be overcome only in the most extreme cases, works to protect the domain of the legislature from encroachment by the judiciary. * * * " *Id.*, 37 Ohio St.3d at 62, 524 N.E.2d at 156.

Disagreement by petitioners and *amici* with the wisdom of the policy embodied by the General Assembly's enactment of R.C. 4121.80 has no legal bearing upon the statute's constitutionality. What petitioners must show here is that R.C. 4121.80 is clearly incompatible with Section 34, Article II of the Ohio Constitution. While petitioners and *amici* may make many challenges to the policy implications of R.C. 4121.80, they do not effectively challenge the authority of the General Assembly to have enacted it. The legislative policy was clearly set forth within such enactment, and Am.Sub.S.B. No. 307,

containing this contested section of law, was passed by a significant bipartisan majority of the Assembly membership and signed by the Governor. Thus, the petitioners' challenge to the constitutionality of R.C. 4121.80 under Section 34, Article II should fail.

## III
### Section 35, Article II

The majority also adopts the position of petitioners and their supporting *amici* that R.C. 4121.80 violates Section 35, Article II of the Ohio Constitution. With this contention I also disagree. The pertinent provision of Section 35, Article II, provides:

"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom.   * * * "

By the terms of this constitutional amendment the General Assembly has been authorized by the electorate to compensate all injuries and diseases which are "occasioned in the course of such workmen's employment." In the case before the court here the complaint alleged that Brady's injuries were occasioned while he was in the course of his employment with the respondent as a truck driver. This allegation clearly falls within the language of the Ohio Constitution authorizing legislation concerning compensation for injured workers.

Prior to *Blankenship*, the Ohio Workers' Compensation Act was the exclusive remedy for all injuries occasioned in the course of employment, and there was no provision in the Act for common-law actions for an intentionally inflicted injury. However, the *Blankenship* majority fashioned the common-law action for intentional torts committed within the workplace and based its holding upon the theory that the employers' immunity under R.C. 4123.74 was not intended by the legislature to cover intentional torts, but only negligent acts of the employer, and that the legislature undoubtedly did not intend to remove all remedies from the employee whose injuries were not compensable under the Act. As noted previously, this latter point was completely scuttled by one of the holdings in *Jones*, which concluded, as a legal fiction, that an injury can have the statutorily required causal relationship to employment for compensation under the Act, and at the same time arise outside the employment relationship so as to support a common-law action for intentional tort. This conclusion puzzled even Justice William B. Brown, author of *Blanken-*

*ship.* See *Jones, supra,* 15 Ohio St.3d at 102–103, 15 OBR at 256–257, 472 N.E.2d at 1056–1057 (W. Brown, J., dissenting).

It is important to note, for purposes of this argument of petitioners and *amici,* that the court, in fashioning the common-law action for intentional tort in *Blankenship,* construed the Constitution and the Workers' Compensation Act, particularly R.C. 4123.74 and 4123.741, in order to determine whether they prohibited such an intentional tort action. However, as pointed out by counsel for the Ohio Farm Bureau and the Ohio Self–Insurers' Association, if the General Assembly had no power to include intentional torts within the Act, then the court obviously would not have needed to construe the statutes to determine whether they prohibited the common-law action.

The majority opinion as it relates to Section 35, Article II of the Ohio Constitution leans upon a weak reed in relying upon the dissenting commentary of Justice Douglas in *Taylor v. Academy Iron & Metal Co.* (1988), 36 Ohio St.3d 149, 155–163, 522 N.E.2d 464, 470–477. The pertinent part of that dissent erratically philosophized that intentional torts were not intended to fall within the purview of Section 35, Article II of the Ohio Constitution in that *"[s]uch injuries are totally unrelated to the fact of employment.* * * * The Industrial Commission can have no jurisdiction over such an action. The lawsuit has no bearing upon any question relating to employment. The jurisdiction of the commission is limited to the matters delineated in Section 35, Article II. The General Assembly has no power to confer jurisdiction on the commission except as authorized by that constitutional provision. * * * Section 35 concerns itself solely with compensation for injuries arising from employment. R.C. 4121.80 concerns itself solely with injuries which by their nature have no connection whatsoever with the fact of employment." (Emphasis *sic.*) *Id.,* 36 Ohio St.3d at 162, 522 N.E.2d at 476. What absurdities the majority has embraced by relying on the *Taylor* dissent, and adopting the theory espoused in *Blankenship* that an intentional tort does not arise out of employment but "necessarily occurs outside the employment relationship." Are the injuries sustained by the petitioner here "totally unrelated to the fact of employment," does this lawsuit have "no bearing upon any question relating to employment," and does this petitioner's injury "have no connection whatsoever with the fact of employment"? I think that a review of the facts clearly provides the answer to these queries, which is resoundingly that the petitioner's injuries were indeed "occasioned in the course of such workmen's employment."

The facts stated in the certification order and the majority opinion show that the petitioner Brady was employed by respondent Safety–Kleen Corporation as a truck driver. Petitioner's duties included hauling used perchloroe-

thylene (a dry-cleaning agent) and other similar hazardous materials, to and from respondent's recycling facility in Hebron, Ohio. Shortly after midnight on July 24, 1987, petitioner and several coworkers were in two trucks transporting used perchloroethylene through Pennsylvania, en route to the Hebron facility, when the truck traveling in front of petitioner's truck spilled perchloroethylene, which splashed on the windshield of petitioner's truck. Petitioner and his coworkers then attempted to right the containers that had spilled. Thereafter, petitioner experienced dizziness, shortness of breath and other symptoms.

As the facts clearly show, the petitioner's injuries as alleged were occasioned while he was driving a truck and employed by respondent to do precisely what he was doing when exposed to the hazardous liquids. On the merits, in proving the proximate cause of the alleged injuries, will not the petitioner need to prove all these related facts of driving this truck for his employer, the routes required by the respondent employer, the spill from another truck driven by a fellow employee of the petitioner, and the petitioner's efforts to clean up the spill? Are all these matters "totally unrelated to the fact of employment"? Does a hazardous waste spill in the course of a company-required trip occur "outside the employment relationship"? The questions answer themselves.

The term "in the course of * * * employment" as utilized in Section 35, Article II of the Ohio Constitution is a very broad term, which has been defined by this court as follows:

"Under Section 35, Article II of our Constitution, and the law enacted pursuant thereto, the phrase, 'in the course of employment,' connotes an injury sustained in the performance of some required duty done directly or incidentally in the service of the employer." *Indus. Comm. v. Ahern* (1928), 119 Ohio St. 41, 162 N.E. 272, at paragraph two of the syllabus.

The phrase "occasioned in the course of * * * employment" in Section 35, Article II grants to the legislature an even greater authority to enact workers' compensation legislation than it has utilized in the more restrictive language of R.C. 4123.01, which defines a compensable injury as one which is "received in the course of, and arising out of," the employment. There is no limitation in the constitutional language with respect to any element of fault or intent of any party involved with an injury. *Indus. Comm. v. Weigandt* (1921), 102 Ohio St. 1, 130 N.E. 38.

An injury sustained by reason of an "intentional tort" as discussed in *Van Fossen v. Babcock & Wilcox, supra,* is an injury received in the course of employment and sustained in the performance of some duty required by the employer. As noted in *Van Fossen,* this type of "intentional tort" was

adopted in *Blankenship, supra,* as an exception to the rule of exclusivity of the workers' compensation law. Another type of injury to an employee which could qualify as an exception to the exclusivity rule is an injury occasioned by the assault and/or battery by the employer. As I stated for the majority in *Van Fossen:* "Additionally, in interpreting the exclusivity provisions of the Workers' Compensation Acts, the courts have generally permitted the common-law remedies for injuries caused by an employer's assault and/or battery upon an employee, whether or not there was any specific statutory exception. This exception constituted one of the earlier judicially recognized and limited exceptions to the exclusivity-of-remedy rule under workers' compensation law. It was reasoned that in so acting toward its employee, the employer should not then be heard to say that his intentional act was an 'accidental' injury deriving from employment duties within the workplace." *Id.,* 36 Ohio St.3d at 112–113, 522 N.E.2d at 501.

Also, as indicative of the type of activity that could be considered as constituting an "intentional tort," *Van Fossen* set forth in syllabus law that for the purposes of establishing the intent of the employer it must be demonstrated that there was "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality, or condition within its business operation * * *." *Id.* at paragraph five of the syllabus. Within this context of the employer's nexus to the judicially created "intentional tort" and the resulting injury, is the dangerous process, procedure, instrumentality, or condition of the business operation. Conversely, there is no assault and/or battery type of tort of the employer that is referred to in, or contemplated by, this syllabus law phraseology.

Concluding, for the exclusivity of the Workers' Compensation Act to be effective the injury must be occasioned by the employment, and not by some dispute or motivation not inherent in the employment. If the assault and battery type of tortious act arose from some personal ill will conceived for reasons not connected with employment, then the injury, regardless of where it occurred, would not have been occasioned in the course of employment, or could be considered outside the employment relationship, would not be compensable under the Act, and the employer would not be protected by the immunity conferred by the Ohio Constitution and the Act.

Completely in lawful conformity with the authority granted by Sections 34 and 35, Article II, the General Assembly in enacting R.C. 4121.80 reaffirmed the exclusivity of the remedies provided by the Workers' Compensation Act for death, injury and occupational disease occasioned in the course of employment, and additionally provided a supplemental remedy for "intentional torts"

suffered by employees in the course of employment and while carrying out their employment duties.

The previous absence of an intentional tort statute for such situations is no more indicative of lack of constitutional authority than was the lack of coverage for certain occupational diseases in the legislative amendment prompted by this court's opinion in *Triff v. Natl. Bronze & Aluminum Foundry Co., supra.* It is my view that R.C. 4121.80 is authorized by Section 35, Article II by the same language which authorized the replacement of negligence and other actions in common law which preceded the Workers' Compensation Act.

## IV

### Other Constitutional Challenges

The majority opinion based its determination upon the absence of constitutional authority within Sections 34 and 35, Article II for the General Assembly to have enacted R.C. 4121.80. However, additional propositions of the petitioner and *amici* claiming certain United States and Ohio constitutional provisions have been violated by R.C. 4121.80 were addressed by the concurrence filed in this matter.

As in any challenge to the constitutionality of a statute, petitioners must overcome a strong presumption that the statute is constitutional. *Beatty v. Akron City Hosp.* (1981), 67 Ohio St.2d 483, 21 O.O.3d 302, 424 N.E.2d 586; *State, ex rel. Jackman, v. Court of Common Pleas of Cuyahoga Cty.* (1967), 9 Ohio St.2d 159, 38 O.O.2d 404, 224 N.E.2d 906.

## A

### Equal Protection

It is claimed that R.C. 4121.80 violates constitutional provisions for equal protection. However, a reasonable review of this legislation, in light of the constitutional authority granted to the Ohio Legislature in matters of workers' compensation and the benefits granted to workers, requires the conclusion that R.C. 4121.80 does not violate the equal protection rights of workers.

The establishment of classifications is one of the General Assembly's inherent powers. It is presumed that a legislative classification is reasonable, fair, and is based upon a legitimate distinction. *State, ex rel. Lourin, v. Indus. Comm.* (1941), 138 Ohio St. 618, 21 O.O. 490, 37 N.E.2d 595.

Petitioners argue that they have been denied equal protection because R.C. 4121.80 creates two classes of intentional tort victims and discriminates against one of those classes. However, it has long been the case in Ohio that

distinctions drawn by the legislature in the workers' compensation arena between employer-employee situations and others are reasonable and legitimate. In *State, ex rel. Yaple, v. Creamer, supra,* 85 Ohio St.3d at 404–405, 97 N.E. at 608, it was held that the limitation of the applicability of the Workers' Compensation Act to workers and operatives and to certain employers was not an improper classification.

Drawing a distinction between victims of intentional torts in an employer-employee context and victims of intentional torts outside this context no more violates equal protection rights than the same distinction drawn by the legislature between victims of negligent torts.

R.C. 4121.80 does not create classes of workers' compensation claimants. All such claimants to whom the statute applies are treated equally. There is no constitutional requirement that all workers' compensation claimants who are victims of intentional torts be treated identically to all other victims of intentional torts. The General Assembly had a legitimate interest in regulating this area of the law in such a way as to balance the interests of employers against those of employees, much the same as it did when the original worker's compensation legislation was passed in 1911.

## B

### Section 16, Article I (Open Courts)

R.C. 4121.80 does not, as claimed by petitioners, violate the constitutional guarantee of open courts and the right to a remedy provided by Section 16, Article I. Although the original enactment of a Workers' Compensation Act did extinguish workers' remedies at common law, a substitute remedy was provided by these same statutes. In *Yaple v. Creamer, supra,* this court, considering an attack on the Act on the basis of Section 16, Article I, held that the statutes provided numerous additional protections and privileges in assuring the workers a remedy from the State Insurance Fund. The court stated that the workers in essence had consented to give up their previously costly and uncertain causes of action in exchange for those statutory protections and privileges. *Id.,* 85 Ohio St. at 399–400, 97 N.E. at 607.

Section 16, Article I prohibits the denial or delay of a remedy. R.C. 4121.80 does not deny or delay a remedy to a worker with an intentional tort claim against his employer. In fact, R.C. 4121.80 helps to improve the chances of obtaining some remedy over the chances of obtaining those remedies previously available at common law. In addition to the compensation for medical expenses and lost wages under R.C. Chapter 4123, this statute allows recovery of supplemental damages for non-economic injury. This statute does not therefore violate Section 16, Article I.

## C

### Limitation of Damages

Petitioners and their supporting *amici* argue that the limitation of damages provided by R.C. 4121.80(D) (caps on damages) violates workers' equal protection rights. I disagree. Courts throughout the country have held that reasonable damage caps having a rational relationship to a legitimate objective are constitutional. Application of the rational basis test to the damage cap in R.C. 4121.80 reasonably leads to the conclusion that it is fully consistent with principles of equal protection.

First, we must recognize that the limitation on damages does not limit compensation under R.C. Chapter 4123. Damages for medical costs are compensated through the workers' compensation benefits on an unlimited basis. The damage cap is the lesser of $1,000,000 and three times the compensation receivable pursuant to R.C. Chapter 4123, a sum reasonably high enough that it is not unfair to employees. Nor is this amount an undue burden on employers. The statutory intentional tort scheme was tailored, after much legislative consideration and study, to promote the legitimate objectives of limiting liability without imposing an undue burden on employee-plaintiffs. While R.C. 4121.80 places a limit on the amount of damages available to employees, it was part of an overall statutory scheme which allows employees to recover workers' compensation benefits on a no-fault basis.

## D

### Right to Jury Trial and Separation of Powers

Petitioners and their supporting *amici* argue that R.C. 4121.80(D) violates the right to a jury trial by conferring on the Industrial Commission the power to assess damages. This is an erroneous argument for two reasons. First, there is no federal constitutional guarantee for a jury trial in the remedy stage of a civil proceeding. *Tull v. United States* (1987), 481 U.S. 412, 425–426, 107 S.Ct. 1831, 1839–1840, 95 L.Ed.2d 365, 378–379. Second, the right to a jury trial is not applicable in an administrative proceeding. It is a well-known fact that the Industrial Commission has been determining damages in what were formerly negligence actions since the inception of the Workers' Compensation Act.

As to the arguments on separation of powers, neither the petitioners nor *amici* show us how the administrative determination of damages in intentional tort actions is distinguishable from the long-standing exercise of this power in all other claims. The Workers' Compensation Act currently provides for the

determination by the Industrial Commission of a variety of damages, from medical, lost wages and other compensatory awards, to the civil penalty for violations of a specific safety requirement by an employer under R.C. 4121.47. These duties of the Industrial Commission do not violate Article IV of the Ohio Constitution. It is my position that R.C. 4121.80(D), in like manner, does not violate Article IV of the Ohio Constitution.

## V

### Epilogue

What now, now that the majority of this court has stricken down a major legislative effort in this field of workers' compensation? The fragments of this shattered measure must somehow be restored to reason. Either legislatively, or by administrative rule, employers who have already been assessed numerous sums of dollars to the intentional tort fund, to be held in trust, must have the money refunded to them with interest. Pending cases must be appropriately processed or settled. Employers clearly have a property interest in the insurance coverage the fund was supposed to provide. *State, ex rel. Louisiana–Pacific Corp., v. Indus. Comm.* (1978), 54 Ohio St.2d 39, 8 O.O.3d 35, 374 N.E.2d 422. These assessments the state may not reallocate to the general fund, but must use them for the purposes for which this special trust fund was established, or return to the employers.

Another consideration is the status of the workplace "intentional tort" action in Ohio after this startling legislative override by the majority of this court. Like it or not, it is a fact of life that the "intentional tort" in workers' compensation law shall survive. This action still exists now by the common law, as previously pronounced by this court in *Blankenship*. However, as partial solace for those who have tended to despair over the direction in which the law of the "intentional tort" has been traveling, and the breadth of fact pattern to which it might be applied, let us recall and review the basic limitations set forth in my opinions in *Van Fossen* and *Fyffe v. Jeno's, Inc.* and to that extent be calmed, if not satisfied, with the status of the law of this judicially espoused inferred tort.

Also a concern is that the pronouncement by the majority here again raises the maelstrom of *Jones.* R.C. 4121.80 provided that an employee may receive workers' compensation benefits pursuant to R.C. Chapter 4123 as well as have a cause of action for intentional tort. However, the amounts received under R.C. Chapter 4123 were to be set off from any amounts recovered in the intentional tort action. *Jones,* of course, provided for no setoff, so where are

we today? Unfortunately, further litigation, or legislation, in this area will be needed to tell.

MOYER, C.J., concurs in the foregoing dissenting opinion.

WRIGHT, J., dissenting. For the most part I concur in the dissenting opinion of Justice Holmes. However, unlike Justice Holmes, I agree with the ultimate result in *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, and application of the standard for assessing tortious intent set forth in Section 8A of 1 Restatement of the Law 2d, Torts (1965). See *Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St.3d 135, 139, 522 N.E.2d 477, 481.

Although undoubtedly concerned with the majority's elimination of a sound legislative response to the confusion inflicted on the public realm by *Jones v. VIP Development Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, the legislature and Ohio industry may take some solace from this court's recent efforts to correct the deficiencies of *Jones.* Beginning with the trilogy of cases in 1988 and continuing through this term, we have removed those elements of *Jones* that are inconsistent with the theory of employer intentional tort espoused in *Blankenship, supra.* See *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489; *Pariseau v. Wedge Products, Inc.* (1988), 36 Ohio St.3d 124, 522 N.E.2d 511; *Kunkler, supra;* and *Fyffe v. Jeno's Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108. See, also, *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 532 N.E.2d 753. Therefore, although the majority today disdainfully turns from the salutary remedial response of our elected representatives in the General Assembly and our former Governor, it has not, thankfully, turned the clock back to those unhappy days following the release of *Jones.*