ACCELERATED OPINION
In the following accelerated calendar appeal, submitted on the record and briefs of the parties, appellant, John Solakakis ("Solakakis" or "appellant"), appeals from a decision of the Trumbull County Court of Common Pleas granting summary judgment in favor of appellee, Schaefer Equipment, Inc. ("Schaefer Equipment" or "appellee"), in an employer intentional tort action. For the reasons that follow, we affirm the judgment of the trial court.
The undisputed facts pertinent to this appeal are as follows. Solakakis was an employee at Schaefer Equipment. In the operation of its business, Schaefer Equipment uses upsetter machines. The upsetter that is the subject of this appeal is a horizontal forging machine where two die halves come together and squeeze a billet, or steel bar stock, into a desired shape. On September 25, 1995, an accident occurred in which Solakakis' left hand was crushed during his employment with appellee. Appellant's injury occurred on an upsetter manufactured by defendant, National Machine Company ("National Machine"), in the late 1920's.
The process utilized by Schaefer Equipment included an independent shearing or cutting of the bar stock to a designated length. The steel bars are then taken and heated in a furnace. Once the bar stock has reached a temperature of approximately 1,800 to 2,000 degrees Fahrenheit, the bars are removed from the furnace and dragged with tongs along a railing and placed into a die area located toward the top of the machine. Upsetting occurs when the machine is activated to cause the dies to come together thereby shaping the metal into the desired dimensions. The material is then removed from the die area and placed on a carrier for transport down the factory line.
Two workers operate the upsetter that is the subject of this appeal. The "heaterman" pulls the hot bar stock from the furnace and drags the material into the die area. The "heaterman" then returns to the furnace to retrieve the next heated billet. The "operator," upon ensuring proper placement of the bar stock, steps down on a foot pedal from which to operate the machine. The "operator" removes the bars, places them on the carrier, and then prepares for the next cycle.
National Machine designed the upsetter at issue to also include a shearing die located toward the bottom of the machine, directly below the upsetting die area. Thus, the machine was originally designed to both cut and upset the steel bars, utilizing the same mechanism of the machine at different times to conduct both functions. Below, the steel bars could be cut in the shearing area, and then removed and carried to a furnace for heating. Once heated, the bars, as previously described, would be dragged and placed into the "upsetting" die area.
Schaefer Equipment, which purchased the machinery second-hand from another company, never utilized the shearing function of the machine. In the company's opinion, the shearing function of the machine, located approximated three feet below the working area for employees utilizing the upsetter, was too close to the ground to be effectively used by its workers. Consequently, Schaefer Equipment only utilized the upsetting function of the machine and used a shearing machine at a different location to cut bar stock.
On the morning of September 25, 1995, Solakakis arrived at work and was given a court document from his foreman regarding the amount of child support that appellant would have taken out of his paycheck each month. Appellant folded up the paper and placed it in his front shirt pocket. He then proceeded to begin his shift working as the "heaterman" on the upsetter.
During his shift, as appellant dragged heated bar stock from the furnace to the upsetter, the piece of paper in his pocket was caught in a gust of wind created by an industrial fan used to cool the work area. The piece of paper was then blown into a pit located between the furnace and the upsetter. Aside from a piece of metal railing above the pit, which was used to help guide the hot billet from the furnace to the upsetter, there was an opening into the pit large enough to permit a person to crouch down from the "heaterman" position and reach into the exposed area. From the evidence presented to the trial court, there is no question that the "heaterman" would not normally have to have any part of his body near this opening as the machine was operating.
After the paper came out of his shirt pocket, Solakakis placed a heated billet in the die area and then reached into the pit area to retrieve his court document. At that time, appellant's coworker operated the upsetter. Appellant had his hand crushed by the machine when a slide assembly caused a portion of the pit area, just above the abandoned shearing mechanism, to close when the machine was in operation. Appellant claimed he did not know that the upsetter contained an abandoned shearing function and never noticed that a slide assembly closed the opening into the pit area as the machine cycled.
On December 20, 1995, Solakakis filed a complaint against National Machine alleging that the combination upsetter/shearing machine was a defective product. National Machine responded to the complaint on January 17, 1996, and the parties began to exchange extensive discovery.
During discovery for the product liability action, several employees of Schaefer Equipment testified that they also had experienced trouble with the same slide assembly that caused appellant's hand to be crushed. These employees described circumstances where they had climbed onto the machine as they were setting the dies used in the upsetter. As they were adjusting the dies, the slide assembly would brush up against their work boots, without injury, anytime their feet wandered into the pit area and the upsetter was "jogged" to test the fit of the dies. One employee stated that he notified management of this danger with the slide assembly. However, each of these employees who had prior difficulties with the slide assembly acknowledged that they only climbed on top of the machine when the upsetter was not in operation and they were setting up the dies. Each of these employees further acknowledged that they would have no reason to place their hand into the pit area between the furnace and the upsetter while the machine was in operation. There was no evidence to the contrary.
On November 15, 1996, Solakakis was given permission from the trial court to file an amended complaint adding Schaefer Equipment as a defendant. Solakakis alleged that Schaefer Equipment was responsible for his injuries pursuant to an intentional tort theory of liability. Appellee filed an answer to the amended complaint and, on September 22, 1997, filed a motion for summary judgment. Appellee averred that it had no intention to cause Solakakis harm and asserted that the sequence of events that resulted in appellant's injuries were so remote that a reasonable person could not conclude that the injury was substantially certain to occur. Appellant subsequently filed a brief in opposition to appellant's motion for summary judgment. Although appellant did not allege that appellee committed a direct intent tort upon him, such as a battery, appellant argued that appellee subjected him to an unreasonably dangerous process by requiring him to work in close proximity to an unguarded hole that contained machinery that Schaefer Equipment did not use.
By judgment entry filed May 11, 1998, the trial court granted Schaefer Equipment's motion for summary judgment. Although the action with respect to National Machine was then still pending, the trial court included within its entry Civ.R. 54(B) language that there was no just reason for delay, thereby permitting immediate appellate review. Cf. Davis v. Tell Realty (Apr. 16, 1999), Portage App. No. 98-P-0126, unreported.[1] From this judgment, appellant filed a timely notice of appeal and, in his sole assignment of error, alleges that the trial court erred in granting appellee's motion for summary judgment.
Civ.R. 56(C), providing the standard governing motions for summary judgment, states in pertinent part that:
 "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *"
In construing Civ.R. 56(C), the Supreme Court of Ohio has stated that the moving party bears the burden of establishing that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds, construing the evidence in favor of the nonmoving party, can come to but one conclusion and that conclusion is adverse to the party opposing the motion. Harlessv. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66; Morrisv. Ohio Cas. Ins. Co. (1988), 35 Ohio St.3d 45, 46-47.
 The Supreme Court of Ohio in Dresher v. Burt (1996), 75 Ohio St.3d 280, set forth the burden that is placed on each party when a motion for summary judgment is filed. The court held:
 "* * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence
of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Id. at 293. (Emphasis sic.)
Solakakis was injured at work. It is axiomatic that the remedy for those injured on the job in Ohio lies almost exclusively within the Workers' Compensation framework. There are exceptions, however, to that rule. One exception that has created an immense amount of confusion and uncertainty for the past few decades is the situation where the employer has committed an intentional tort which has resulted in injury to an employee. As the Supreme Court of Ohio recognized in Blankenship v. CincinnatiMilacron Chemicals (1982), 69 Ohio St.2d 608, 614-615, it is against the public policy of the state to provide insurance coverage to insulate employers from the natural consequences of their intentionally tortious behavior.
Following Blankenship, the Supreme Court of Ohio commenced over a decade-long struggle to both define the term "intentional tort" within the employer/employee relationship as well as settling constitutional disputes with the Ohio General Assembly when it attempted to enact legislation governing intentional torts that occurred within the employment relationship. See, e.g. VanFossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100; Fyffe v.Jeno's, Inc. (1991), 59 Ohio St.3d 115; Brady v. Safety-KleenCorp. (1991), 61 Ohio St.3d 624.
Most recently, in Johnson v. BP Chemicals, Inc. (1999),85 Ohio St.3d 298, the Supreme Court of Ohio squarely addressed the legislature's continuing efforts to modify, codify and clarify the mechanisms necessary to prove a cause of action sounding in intentional tort occurring at the workplace. In striking down R.C. 2745.01 in its entirety, the court held once again that it is "abundantly clear that any statute created to provide employers with immunity from liability for their intentional tortious conduct cannot withstand constitutional scrutiny." Id. at 304. Once again, the court reiterated, as it had done in Brady nearly a decade earlier, that this area of the law is constitutionally protected and not subject to legislative regulation. It is that simple.
The standard for proving an employer intentional tort has been enunciated by the Supreme Court of Ohio in Fyffe v. Jeno's,Inc. (1991), 59 Ohio St.3d 115, as follows:
 "Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser Keeton on Torts (5 Ed. 1984), in order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. * * *" (Citations omitted.) Id. at paragraph one of the syllabus.
Additionally, the Supreme Court of Ohio held as follows:
 "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent. * * *" (Citations omitted.) Id. at paragraph two of the syllabus.
 For the purposes of clarification "substantial certainty" means that if an injury is the probable consequence of an act, then the act was substantially certain to have produced the injury. That is a question of fact.
We begin with the first prong of the Fyffe test, which requires evidence that the employer knew of the existence of a dangerous process, procedure, instrumentality, or condition within its business operations. In the present case, the trial court determined that reasonable minds could differ as to whether Schaefer Equipment had knowledge of a dangerous condition within its plant. We agree.
As the parties conducted discovery in this case, several employees came forward and described instances where they had climbed on top of the upsetter, when the machine was not in operation, and felt the slide assembly brush up against their work boots if their feet wandered into the pit area between the furnace and the upsetter. One of these employees stated that he notified his foreman, who holds a management position within the company, of the potential danger associated with the machine. Although appellee denied that it was even made aware of this dangerous condition within its operation, this factual dispute was sufficient to meet appellant's burden to survive a summary judgment as to the first prong of the Fyffe test.
Despite appellant's ability to establish, for purposes of summary judgment, that Schaefer Equipment was on notice of a dangerous condition within its operation, the trial court determined that reasonable minds could not differ as to the second and third prongs of the standard to be applied with respect to establishing an intentional tort. The critical issue is whether Schaefer Equipment knew that the dangerous condition within its operation was substantially certain to cause harm to an employee and yet still required the employee to perform the dangerous task. For the reasons that follow, we agree with the trial court's assessment that Solakakis failed to meet his burden with respect to the second and third prongs of the Fyffe test.
As to the second prong of the Fyffe test, the court inEmminger v. Motion Savers, Inc. (1990), 60 Ohio App.3d 14, 17, held as follows:
 "Proof of the employer's intent in the second category is by necessity a matter of circumstantial evidence and inferences drawn from alleged facts appearing in the depositions, affidavits and exhibits. Even with these facts construed most strongly in favor of the employee as required by Civ.R. 56, the proof of the employer's intent must still be more than negligence or recklessness."
 As to this critical issue, appellant focused his argument on the other employees who experienced difficulty with the slide assembly as they climbed on top of the machine to set the dies. While the other employees' trouble with the machine, when it was not in operation, established that the slide assembly would pose a potential risk of injury if an employee placed his hand in the pit area between the furnace and the upsetter, these facts do not justify the conclusion that an injury to an employee was substantially certain to occur. All of the employees who experienced difficulty with the machine in the past, including appellant, acknowledged that there was no reason for an employee to place any object into the pit area while the machine was in operation. Indeed, in excerpts taken from Solakakis' deposition in this matter, appellant stated as follows:
 "Q: Do you think anybody at Schaefer [Equipment], when they asked you to do this job, knew that it was highly probable you would be hurt?
"A: No.
 "Q: Okay. From your description of what happened, and going on what I have heard today, it seemed that about three or four things had to line up in order for you to be hurt. The first thing that had to happen was this paper had to blow out of your pocket. Do you think that anybody at Schaefer [Equipment] knew that that was likely to happen or that that was highly probable?
"A: No.
"* * *
 "Q: The second thing that had to happen is the paper had to end up in this opening on the side of the machine. Is there any reason that you can think of why Schaefer [Equipment] should have expected that to happen?
"* * *
"A: No
"* * *
 "Q: The third thing that had to happen is you had to reach in that opening to get this paper. Is there any reason you can think of why Schaefer [Equipment] should have expected you to reach in that opening on the day of your injury?
"A: No
 "Q: Normally, there is no reason for anybody to have to reach in that opening when they operate the machine; that's true, isn't it?
"A: I have never seen nobody.
"Q: You have never reached in there before, have you?
"A: No.
 "Q: Did you have any reason to think Schaefer [Equipment] thought it would be probable that you would reach in this opening on the day you were hurt?
"A: No.
"* * *
 "Q: The last thing that had to line up for this to happen was that at the precise instant you reached in there, the machine had to be cycling. Is there any reason you can think of why Schaefer [Equipment] would expect the machine to be cycling at the time when your hand was in there?
"A: No." (Emphasis added.)
 Finally, we consider whether appellant presented evidence creating a genuine issue of material fact as to whether Schaefer Equipment, knowing of a dangerous condition and of the substantial certainty for harm, required appellant to continue to perform the dangerous task.
The record in this case is devoid of any evidence that appellant had a policy in place or otherwise required its employees to place their hand in the pit area between the furnace and the upsetter. Additionally, there is no evidence that an employee had to place any object within this area as a necessary part of his employment duties. As previously discussed, the "heaterman" was required to drag a heated billet across a piece of metal railing connecting the furnace to the upsetter. There is no requirement for an employee to crouch under the railing and enter the pit area for any reason while the machine is in operation.
Based on the circumstances presented in this case, there is no genuine issue of material fact as to whether Schaefer Equipment acted to require appellant to perform a dangerous task that it knew was substantially certain to cause injury. Consequently, as appellant failed to establish the second and third prongs of theFyffe test from which to establish an employer intentional tort, the trial court properly granted summary judgment in favor of Schaefer Equipment. Appellant's sole assignment of error is without merit. The judgment of the trial court is affirmed.
 _____________________________ JUDGE WILLIAM M. O'NEILL
CHRISTLEY, P.J.,
NADER, J.,
concur.
[1] By judgment entry filed June 12, 1998, the trial court permitted the remaining parties to this action, Solakakis and National Machine, to dismiss that case without prejudice. As the action between Solakakis and National Machine is not the subject of the current appeal, we offer no opinion as to the validity of the remaining parties' "dismissal." However, we note that the result we reached in the Davis case, dismissing an appeal for lack of a final appealable order with a procedural history very similar to the case sub judice, is distinguishable because the trial court included "no just reason for delay" language in its judgment entry.