OPINION
Plaintiff-Appellee/Cross-Appellant, Ted E. Cathey ("Cathey"), and Defendant-Appellant/Cross-Appellee, Cassens Transport Co. ("Cassens"), both appeal a judgment of the Court of Common Pleas of Union County disposing of the parties' cross motions for summary judgment. For the reasons expressed in the following opinion, we affirm in part and reverse in part.
This appeal stems from injuries Cathey received in the course and scope of his employment with Cassens. At the time of the accident, Cathey was employed as an over the road hauler for Cassens, an interstate trucking company that regularly transports automobiles to dealerships. On December 23, 1997, Cathey received an assignment to deliver vehicles from Cassens' Marysville terminal to W.A. Burgunder, Inc., an automobile dealership in McKees Rock, Pennsylvania. When Cathey arrived at the dealership, he parked his truck on the shoulder of the road to unload the vehicles, because the dealership does not have sufficient space to unload the vehicles on its lot. While Cathey was unloading the vehicles, he was struck by a car. As a result of the accident, Cathey sustained injuries to his back and knee. After the accident, Cathey finished unloading the vehicles and then went to a local hospital for treatment, where he was examined and released with instructions to follow-up with his company doctor.
Subsequently, Cathey filed for, and began receiving workers' compensation benefits. From December 24, 1997 through May 11, 1998 he received approximately $9,700. Thereafter, on June 10, 1998, Cassens filed a motion in the Industrial Commission of Ohio to recoup workers' compensation benefits. Cassens alleged that Cathey was engaged in part-time employment in a lawn care business he co-owns with his wife during the time he was receiving payments.
On August 31, 1998, the motion came before a District Hearing Officer (DHO) in the Industrial Commission of Ohio. The DHO found that during the time Cathey was receiving workers' compensation benefits, he was engaged in some employment in his lawn care business. The DHO ruled that Cathey was ineligible for all workers' compensation benefits received, and that Cassens should recoup the entire amount paid out pursuant to R.C. 4123.51.1(J). The DHO also noted that "no ruling on fraud is made herein and the recoupment provision in ORC 4123.51.1(J) pertaining to fraud is not applicable to this overpayment." Cathey then appealed the DHO's order.
On December 3, 1998, Cathey's appeal came before a Staff Hearing Officer (SHO) in the Industrial Commission of Ohio. The SHO vacated the order of the DHO and held that Cathey was eligible for workers' compensation benefits from December 24, 1997 through April 26, 1998. However, the SHO declared an overpayment from April 27, 1998 through May 11, 1998, and ruled that Cassens is entitled to recoup that overpayment pursuant to R.C. 4123.51.1(J). Additionally, the SHO noted that Cassens did not request a finding of fraud and, therefore, did not address the issue.
Following the SHO's decision, on December 23, 1998, Cathey filed a complaint in the Court of Common Pleas of Union County, seeking damages from Cassens under an intentional tort theory of liability. Cassens counterclaimed, alleging that Cathey fraudulently accepted workers' compensation benefits after his injury. Both parties then moved for summary judgment. Subsequently, the trial court sustained Cassens' motion for summary judgment, and overruled Cathey's motion for summary judgment, holding that Cassens could bring a common law action for fraud. However, the trial court held that the fraud claim is barred by the doctrine of res judicata, and Cassens is limited to recovering the amount awarded by the Industrial Commission.
Both parties now appeal the judgment of the trial court. Cathey asserts two assignments of error for our review.
 Assignment of Error No. 1 The trial court erred when it granted Defendant's motion for summary judgment on Plaintiff's claim for employer intentional tort.
In reviewing the propriety of a grant of summary judgment, an appellate court reviews the issue under the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129. It is axiomatic that a trial court is without authority to grant summary judgment unless it can be demonstrated that:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United (1977), 50 Ohio St.2d 317, 327; Civ.R. 56(C).
In Ohio, workers' compensation laws are generally the exclusive remedy for injured employees. See R.C. 4123.74; Section35, Article II of the Ohio Constitution. However, in Blankenshipv. Cincinnati Milacron Chemicals, Inc. (1982), 69 Ohio St.2d 608, the Supreme Court recognized the employer intentional tort exception to the workers' compensation exclusivity doctrine. Subsequently, the Court set forth a three-prong test for establishing an employer intentional tort claim.
 Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser Keeton on Torts (5 Ed. 1984), in order to establish "intent" for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
Fyffe v. Jeno's Inc. (1991), 59 Ohio St.3d 115, 118. The Court has also held that the elements necessary in establishing an employer intentional tort may be proven by direct or circumstantial evidence. Hannah v. Dayton Power Light Company
(1998), 82 Ohio St.3d 482, 485.
Cathey first argues that the trial court applied an incorrect legal standard in overruling his motion for summary judgment. In its judgment entry, the trial court used the term "unreasonably dangerous" in its analysis of the facts pursuant to the Fyffe
test; however, this test does not require that the dangerous process, procedure, instrumentality or condition be unreasonable. Although we acknowledge that the trial court used the incorrect terminology, this court has held that we are not inclined to reverse a decision for that reason if, upon independent analysis, we find that the trial court reached the correct result. Yontz v.Griffin (July 8, 1999), Hardin App. No. 6-99-01, unreported, citing Joyce v. General Motors (1990), 49 Ohio St.3d 93. Additionally, we review and analyze the evidence under the same standard as the trial court. Therefore, Cathey's argument is not well taken.
Prior to addressing the intentional tort claim pursuant toFyffe, we note that Cassens, in its reply brief, and in its response to Cathey's motion for summary judgment, argues that Cathey's intentional tort claim is preempted by Section 301 of the Labor Management Relations Act (29 U.S.C. § 185). The trial court, however, did not address this issue in its ruling. Because our review is de novo, we will briefly address Cassens' argument.
The United States Sixth Circuit Court of Appeals has established a two-part test for resolving Section 301 preemption issues. DeCoe v. General Motors Corporation (C.A.6, 1994),32 F.3d 212, citing Terwilliger v. Greyhound Lines, Inc. (C.A.6, 1989), 882 F.2d 1033. First, the court must determine whether the plaintiff's right is created by the collective bargaining agreement, or by state law. DeCoe, 32 F.3d at 216. If the plaintiff's right is created by state law, the court must also determine whether proof of the state law claim requires interpretation of the collective bargaining agreement. Id. If either the plaintiff's right is created by the collective bargaining agreement, or proof of the state law claim requires interpretation of the agreement, the claim is preempted by Section 301. Terwilliger, 882 F.2d at 1038.
In addressing the first part of the test in Decoe andTerwilliger, we note that Cassens acknowledged that Cathey's right is created by state law, and not by the collective bargaining agreement. With respect to the second part of the test, we find that proof of Cathey's state law claim does not require interpretation of the collective bargaining agreement. As such, Cathey's intentional tort claim is not preempted by Section 301, and we decline to reverse the trial court's denial of Cassens' motion for summary judgment for this reason. Therefore, we will proceed with our analysis of the intentional tort claim pursuant to Fyffe.
The first prong of the Fyffe test requires knowledge on behalf of the employer regarding the existence of a dangerous process, procedure, instrumentality or condition. In regards to employer knowledge, this Court has previously stated:
 [D]angerous work must be distinguished from an otherwise dangerous condition within that work. It is the latter of which that must be within the knowledge of the employer before liability could attach.
Naragon v. Dayton Power and Light Co. (Mar. 30, 1998), Shelby App. No. 17-97-21, unreported, citing Brady v. Safety-Kleen (1991),61 Ohio St.3d 624.
In addition, this court has stated:
 It must be emphasized that this is not the "reasonable person" standard for determining negligence or recklessness; that is, the fact that the employer should have known it was requiring the employee to work under such dangerous conditions that he would certainly be injured is not enough to establish a case in intentional tort. Rather, the determination rests upon a claimant's alleging facts which show the employer's actual knowledge of the situation.
* * *
 The Fyffe test makes it abundantly clear that an analysis of employer "intent" rests upon the employer's actual knowledge of, and its response to, the dangerous situation which resulted in the plaintiff/employee's injury.
Fultz v. Baja Boats, Inc. (Feb. 18, 1994), Crawford App. No. 3-93-10, unreported.
As proof that Cassens had direct knowledge of a dangerous business condition, Cathey points to the affidavit of Roy Atha, the principle officer for Local 654 of the Teamster's Union. In his affidavit, Roy Atha states that he has discussed the safety issues concerning unloading on public streets, with Don Trainer and Joe Clark, both of whom are representatives of Cassens. However, he also states that he cannot recall specific names of persons on whose behalf he raised these concerns, and that none of these incidents ever progressed to the grievance stage.
On the other hand, we note the affidavits of Don Trainer, Terminal Manager of the Marysville Terminal of Cassens, and David Slavinsky, the Service Manager of W.A. Burgunder, Inc. In his affidavit, Don Trainer states that during his fifteen years with Cassens, he is unaware of any other driver being struck by a moving vehicle while unloading cars. Likewise, David Slavinsky states that he is unaware of any traffic or pedestrian accident that has occurred during the delivery of cars to his dealership.
Based on the evidence before us, we conclude that the trial court correctly found that Cathey has not established the first prong of the Fyffe test. However, assuming arguendo, that Cassens had knowledge of a dangerous work condition, we also agree with the trial court that Cathey has not satisfied the second prong of the Fyffe test, which requires knowledge on behalf of the employer that harm to the employee will be a substantial certainty. In addressing the second prong of the Fyffe test, we have previously held that substantial certainty is greater than an employer's knowledge of a high risk of harm or danger. See Jenkins v. QuincyFoundry, Division of Warren Tool Company (Feb. 23, 1990), Logan App. No. 8-88-26, unreported; Myers v. Oberlin Processing, Inc.
(Sept. 27, 1996), Seneca App. No. 13-96-20, unreported.
Cathey claims that there have been previous complaints made to Cassens regarding the safety of unloading vehicles on public thoroughfares. In addition, he claims that there have been prior injuries resulting from unloading vehicles under dangerous conditions. Thus, he claims that because of the dangerous conditions present, an injury is substantially certain to occur at some time in the future. We note, however, that all of these claims are unsubstantiated. Although Don Trainer acknowledges that one risk of loading and unloading cars involves the hazard of working in close proximity to moving vehicles, he is unaware of any employee being struck by a moving vehicle while loading or unloading cars. He also notes that employees are well trained in safety and health issues and, in addition, are provided various warning devices on their trucks in order to alert other drivers of potential hazards.
Although it is apparent that Cassens knew of the dangers and risks involved in loading and unloading cars in high traffic areas, its knowledge did not rise to the level of a substantial certainty that injuries would result from such activity. Therefore, we also agree with the trial court that Cathey has not satisfied the second prong of the Fyffe test.
Again, assuming arguendo, that Cassens was acting with knowledge that harm to its employees was a substantial certainty, there is no evidence that it required its employees to continue working under such conditions. In fact, Don Trainer testified that employees are aware that if they are directed to load or unload vehicles under hazardous conditions, they are instructed to call the terminal and discuss the issue. He also stated that any employee who refuses to work under the belief that he or she will be exposed to harm or injury, will be protected from discharge, discipline, or any form of retaliation. Therefore, in light of any evidence to the contrary, we also agree with the trial court that Cathey has not satisfied the third prong of the Fyffe test.
Accordingly, Cathey's first assignment of error is not well taken and is therefore overruled.
 Assignment of Error No. 2 The trial court erred in failing to grant Plaintiff's motion to dismiss and for summary judgment on the basis of lack of subject matter jurisdiction.
It is well settled that subject matter jurisdiction may be raised, sua sponte, by the court at any stage in the proceedings, and may be raised for the first time on appeal. Fox v. EatonCorporation (1976), 48 Ohio St.2d 236.
Cathey argues both that the trial court erred in failing to dismiss Cassens' common law fraud action because Cassens failed to exhaust administrative remedies below, and because the trial court lacks subject matter jurisdiction. In support, Cathey claims that Cassens must first request a finding of fraud in the Industrial Commission pursuant to R.C. 4123.51.1(J)(4) and, if dissatisfied, may appeal under statutory guidelines. Although we agree with Cathey regarding the ultimate result, our decision herein is based on reasoning not raised by either party on appeal.
The Supreme Court of Ohio has held that "a party's right to appeal workers' compensation decisions to the courts is conferred solely by statute." Felty v. ATT Technologies, Inc. (1992),65 Ohio St.3d 234, 237. Litigants may seek judicial review of decisions by the Industrial Commission in one of three ways: by direct appeal to the courts of common pleas pursuant to R.C. 4123.51.9, by filing a mandamus petition in the Supreme Court or in the Tenth District Court of Appeals, or by a declaratory judgment action pursuant to R.C. Chapter 2721. Id. "[I]f the litigant seeking judicial review does not make the proper choice, the reviewing court will not have subject matter jurisdiction and the case must be dismissed." Id.
Of the three forms of judicial review noted above, the most limited in form is by direct appeal to the courts of common pleas.Felty, 65 Ohio St.3d at 237. The proper procedure for direct appeals to the courts of common pleas is set forth in R.C. 4123.51.2, formerly 4123.51.9. Regarding appeals from the Industrial Commission pursuant to R.C. 4123.51.2, the Supreme Court of Ohio has stated:
 Only decisions reaching an employee's right to participate in
the workers' compensation system because of a specific injury or occupational disease are appealable under R.C. 4123.51.9.
Id. at the syllabus. The Court has taken a stringent view on appeals pursuant to R.C. 4123.51.2 because courts in Ohio simply cannot review all of the decisions of the commission if the commission is to remain an effective and independent agency. Id. at 238.
In addressing this jurisdictional matter, we look to a decision by the Eighth District Court of Appeals, LTV SteelCompany v. Gibbs (1996), 109 Ohio App.3d 272. In that case, the appellant-employer, LTV Steel Co., appealed the trial court's dismissal of its complaint against appellee-Gibbs for lack of subject matter jurisdiction on LTV's claim to recover workers' compensation benefits mistakenly paid to appellee's client. LTV Steel argued that the trial court had jurisdiction to hear its common law claims to recover workers' compensation benefits paid by mistake, and fraudulently converted by appellee.
In affirming the decision of the trial court, the Eighth District Court of Appeals stated:
 * * * [T]he trial court below correctly determined that it lacked jurisdiction to make an original determination as to whether there had been overpayments because those are matters vested, in the first instance, solely within the jurisdiction of the commission.
 Since common pleas jurisdiction is limited to appeals regarding the right to participate in the fund and not the extent of participation, a right to recoup overpayments would not be within the jurisdiction of the common pleas court. LTV must seek redress from the commission and then if dissatisfied, may file a complaint for a writ of mandamus with the Tenth District Court of Appeals.
LTV Steel, 109 Ohio App.3d at 277; See also Airtron, Inc. v.Quesenberry (Mar. 3, 1994), Cuyahoga App. No. 64738, unreported.
We find that the decision in LTV Steel directly addresses the issue sub judice. This is an issue vested "solely within the jurisdiction of the commission." LTV Steel,109 Ohio App.3d at 277. Therefore, Cassens must first seek redress from the commission and, if dissatisfied, may file a complaint for a writ of mandamus with the Supreme Court, or the Tenth District Court of Appeals, which is the only court of appeals with proper venue over an original action in mandamus against the Industrial Commission.State ex rel. Cook v. Zimpher (1985), 17 Ohio St.3d 236.
Our holding today is also supported by statutory law. R.C.4123.52 provides for the continuing jurisdiction of the Industrial Commission to hear issues of fraud. State ex rel. Bowman v.Industrial Commission of Ohio (1992), 65 Ohio St.3d 317, 319. R.C. 4123.52 states in part:
 The jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified.
Further support is found in R.C. 4123.51.1(J)(4), which states in relevant part:
 * * * The administrator and self-insuring employers are not subject to, but may utilize, the repayment schedule of this division, or any other lawful means, to collect payment of compensation made to a person who was not entitled to the compensation due to fraud as determined by the administrator or industrial commission. [Emphasis added]
Section 4123.51.1(J)(4) provides that the Administrator of Workers' Compensation, or the Industrial Commission must make an initial finding of workers' compensation fraud.
Despite case law and statutory law to the contrary, Cassens argues that the trial court has jurisdiction pursuant to R.C.2913.48, which provides criminal penalties for workers' compensation fraud. R.C. 2913.48(D), upon which Cassens relies, states:
 The remedies and penalties provided in this section are not exclusive remedies and penalties and do not preclude the use of any other criminal or civil remedy or penalty for any act that is in violation of this section.
Cassens interprets the phrase "any other criminal or civil remedy or penalty" to mean that it can select any civil remedy it desires to pursue its fraud claim. We disagree. This phrase merely provides that R.C. 2913.48 is not the exclusive remedy, and a party may pursue applicable civil remedies. The General Assembly has spoken in this area and, as noted above, the issue of workers' compensation fraud must initially be decided within the Industrial Commission. Therefore, we find that the trial court lacked subject matter jurisdiction to address Cassens' common law fraud claim.
Accordingly, we sustain Cathey's second assignment of error for the reasons set forth above.
Cassens asserts the following assignment of error our review.
 The trial court erred when it applied the doctrine of res judicata to bar Defendant-Appellant's civil action for fraud.
Because we held above that the trial court lacked subject matter jurisdiction to consider Cassens' claim for fraud in the first instance, it follows that the trial court's prior ruling on the issue is a nullity and Cassens' assignment of error is therefore moot.
Having found no error prejudicial to Cathey with respect to the intentional tort claim herein, in the particulars assigned and argued, we affirm the judgment of the trial court as to Cassens' motion for summary judgment. However, we hold that the trial court lacked subject matter jurisdiction to hear Cassens' claim for common law fraud and, therefore reverse the judgment as to Cathey's motion for summary judgment and remand the cause to the trial court to dismiss in accordance with this opinion.
Judgment affirmed.
HADLEY, P.J., concurs.
SHAW, J., concurs in judgment only.