DECISION AND JOURNAL ENTRY
Appellant Gregory Best has appealed from a judgment of the Lorain County Common Pleas Court which granted summary judgment in favor of Leland Goss and Energized Substation Services, Inc. This Court reverses and remands for proceedings consistent with this decision.
 I.
On October 9, 1989, Gregory Best was employed by Energized Substation Services, Inc. (ESS) as a painter. On that date, Best was injured while painting a substation owned and operated by Dayton Power Light Company. The substation was located in Vandalia, Ohio. The evening before he sustained his injuries, he was advised by his immediate supervisor Leland Goss (Goss) that the substation would be "de-energized" with the exception of the transformers and towers. Best was nevertheless told to treat the equipment as if it was energized and to keep a safe distance from it.
Upon reporting to work on the date in question, Best and his co-workers were advised that Goss would be painting around the "potheads," that they were to act as if the equipment was energized and that they were to maintain a safe distance. Each employee signed a site safety checklist indicating that he had been given safety instructions for this work site and that he understood them. The checklist specifically enumerated as a special condition that they were to "stay away from 13,800 potheads at least three feet and journeyman (sic) will spray vertical and horizontal beams surrounding potheads." Finally, the employees were instructed how to safely ascend and descend the substation structure.
After the safety meeting, Best, Goss and the rest of the crew ascended the substation and began to paint. Best had paint mittens and a metal bucket containing his paint supply, which was attached to the safety belt around his waist. After fifteen minutes, Best had moved and was painting the structure directly above the potheads. Goss, who was spray-painting the energized potheads below, instructed Best not to paint the structure upon which he stood because it was in such a dangerous place. In order to motivate Best to move, Goss sprayed paint at Best's feet and legs. Best protested and when he did not move, Goss attempted to spray him once more. When Best stepped back to avoid being showered with paint, he placed his foot on wet paint and slipped. As he fell, he hooked his arm over a cross brace, part of the substation structure. However, as he hung there, the metal paint supply bucket attached to his safety belt swung into the field of electricity around the energized potheads. As a result of this contact, Best suffered injuries and required medical treatment.
On September 28, 1990, Best filed a complaint in the Lorain County Common Pleas Court, alleging intentional tort claims against Goss, ESS and the Dayton Power Light Company. That action was voluntarily dismissed on the eve of trial, January 31, 1995. On October 19, 1995, Best refiled his suit naming only Goss and ESS as defendants.[1]
Thereafter, Goss and ESS moved for summary judgment, arguing that Plaintiff could not demonstrate that he had been subjected to dangerous conditions, which were substantially certain to cause his injuries. After briefing, the trial court agreed and granted Goss and ESS's motion on March 16, 1999. Best timely appealed, asserting two assignments of error. He has essentially argued that the trial court erred in granting summary judgment against him. For ease of discussion, this Court will set forth the appropriate standard of review, consolidate the assignments of error and review each of the parties' arguments in turn.
 II. A. Summary Judgment
This Court observes that upon a motion for summary judgment pursuant to Civ.R. 56(C), where a party seeks summary judgment on the ground that the nonmoving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The Dresher
court continued,
 The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
 Id. at 293. The court then went on to limit the third paragraph of the syllabus of Wing v. Anchor Media, Ltd. ofTexas (1991), 59 Ohio St.3d 108, to conform to the above requirements. Dresher, 75 Ohio St.3d at 295.
These principles were reaffirmed in Vahila v. Hall (1997),77 Ohio St.3d 421, 430:
 As explained in Mitseff (and more recently in Dresher), bare allegations by the moving party are simply not enough. The party seeking summary judgment always bears the initial responsibility of [1] informing the court of the basis for the motion and [2] identifying those portions of the record which support his or her claim. Then, and only then, is the initial burden discharged, requiring the nonmoving party to comply with Civ.R. 56(E).
(Emphasis sic.) Thus, it is apparent that unless the movant fulfills both prongs of the Dresher duty, the motion for summary judgment must be denied. The moving party is required to state the basis for his motion and then point to "pleading[s], depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any" which support the motion. Civ.R. 56(C). Merely alleging that a nonmoving party lacks evidence does not satisfy this obligation. Unless and until that burden is met, the nonmovant is under no corresponding duty, and the motion must be denied. "[A] movant's conclusory assertions of no evidence against the nonmovant [are] no longer good enough in Ohio." Am. Express Travel Related Serv. Co., Inc. v.Mandilakis (1996), 111 Ohio App.3d 160, 164. Further, assuming the movant satisfies his burden, the nonmovant is then permitted to present or point out evidence that satisfies his reciprocal burden to demonstrate the existence of a material factual dispute.
 B. Employer Intentional Torts
Prior to 1982, the protection afforded by workers' compensation laws in Ohio encompassed any injury occurring at the workplace. The Ohio Supreme Court has since recognized that workers' compensation laws were designed to improve the plight of the injured worker, and observed that to hold that intentional torts were included under the Workers' Compensation Act would be tantamount to encouraging such conduct, and clearly not in line with the motivating spirit and purpose of the Act. Blankenship v.Cincinnati Milacron Chemicals (1982), 69 Ohio St.2d 608,614.[2] Brady v. Safety-Kleen Corp. (1991), 61 Ohio St.3d 624, paragraph one of the syllabus. Accord Jones v. V.I.P.Development Co. (1984), 15 Ohio St.3d 90. Affording an employer immunity for its intentional behavior would not promote a safe and injury free work environment, for an employer could commit intentional acts with impunity with the knowledge that, at the very most, his workers' compensation premiums may rise.Blankenship, 69 Ohio St.2d at 615. Thus, an employee is not precluded by the exclusivity provisions of the workers' compensation laws from bringing a common law intentional tort action if he or she can prove the elements of a common law intentional tort by an employer. Id; Trojan v. Ro-Mai Industries,Inc. (August 19, 1998), Summit App. 18778, unreported, at 6.
In order to establish a prima facie case within the common law meaning of an intentional tort by an employer, an employee must demonstrate each of the following:
 (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation;
 (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and,
 (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
 Fyffe v. Jeno's Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus. Moreover, "to establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established." Id. at paragraph two of the syllabus. The Fyffe court further explained by stating:
 Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent.
 Id; see, also, Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 117. It is this element of substantial certainty which distinguishes a merely negligent act from intentionally tortious conduct. Id. at 116, quoting Jones, 15 Ohio St.3d at 95.
The distinction between negligence, recklessness and substantial certainty is a matter of degree. Van Fossen,36 Ohio St.3d at 115, quoting Prosser Keeton, in Law of Torts (5 Ed. 1984) 36, Section 8. The line must be drawn where "the known danger ceases to be only a foreseeable risk which a reasonable person would avoid, and becomes in the mind of the actor a substantial certainty." Id.
 C. Application
In their motion for summary judgment, Goss and ESS argued that Best could not prove, as a matter of law, any of the three elements of an employer intentional tort claim as set forth inFyffe. Specifically, they argued that Best could not prove that (1) Goss, and thereby ESS, created the dangerous condition which caused Best to fall, (2) his injuries were substantially certain to occur, and (3) Goss required Best to proceed in the face of danger. This Court now turns to the first element of Best's primafacie claim.
1. Knowledge of a Dangerous Condition
Goss and ESS have conceded that working with and around electrical systems is inherently dangerous work. They have argued, however, that summary judgment was warranted unless Best produced evidence that they had actual knowledge of the dangers which ultimately caused his injury. See Van Fossen,36 Ohio St.3d at 112. In other words, if the allegations in Best's complaint and the evidence he offered in response to the motion for summary judgment do not create an issue of fact on whether Goss and ESS's had knowledge of the exact dangerous conditions which caused his injuries, the trial court's judgment must be affirmed.
Best alleged several dangerous conditions in his complaint. First, he alleged that Goss and ESS created a dangerous condition when Goss sprayed Best's feet and the area in which he was standing with zinc-based paint. He alleged that Goss and ESS failed to provide him with safe gear and adequate safety training. Best further alleged that they were on notice of such dangers because several employees had been injured in a similar manner. Finally, he alleged that Goss and ESS misrepresented the dangers of the job to him.
a. Spraying of Feet
In support of their motion for summary judgment, Goss and ESS have argued that Best's complaint does not specifically allege that Goss created a dangerous condition when he sprayed paint on and near Best's feet. They have claimed that as a result of this deficiency, the trial court properly disregarded Best's evidence submitted on that point. This Court disagrees.
Civ.R. 8(A) provides, in pertinent part:
 A pleading that sets forth a claim for relief * * * shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled.
 Pursuant to Civ.R.8(A), as this Court has previously noted, "[a]ll that is required for notice pleading is a short and plain statement of the claim showing that the party is entitled to relief[.]" Thatcher v. Goodwill Industries of Akron (1997), 117 Ohio App.3d 525, 534. In paragraph seven of his complaint, Best specifically alleged that he was injured as a result of his fall and that he "was caused to slip and fall by the actions of [Goss]." As such and contrary to Goss and ESS's arguments, these facts are sufficient to meet the requirements of notice pleading under Civ.R. 8(A).
In spite of their position that the complaint failed to set forth enough facts to include Goss' spraying as a dangerous condition, Goss and ESS also submitted the deposition of Best wherein he conceded that Goss did not intend to injure him. They argued that, in light of his concession, Best did not have any evidence that Goss' actions intentionally created a hazard.
In response, Best submitted ESS's own written safety procedures wherein employees are prohibited from walking or standing on wet paint. In addition, Best offered Goss' deposition in which he acknowledged that the rule was instituted to prevent an employee from falling and being electrocuted. Indeed, Goss analogized walking on wet paint to walking on grease.
Construing the evidence in favor of Best, the nonmoving party, this Court believes that there is a genuine question of material fact regarding whether Goss and ESS created and had exact knowledge of a dangerous condition when Goss sprayed paint at and around Best's feet. As Best aptly noted, spraying wet paint beneath the feet of an employee precariously poised over an electrified steel structure is precisely the type of conduct that would give rise to an employer intentional tort cause of action. Because a material question of fact remains, summary judgment was improper.
b. Use of Inadequate, Dangerous Equipment
Best also alleged that Goss and ESS had knowledge of a dangerous condition when they required him to use a zinc-based paint and metal bucket to carry it. With regard to this portion of Best's complaint, Goss and ESS argued that the use of a metal paint bucket was safer than the alternative, a plastic one. They also argued that zinc-based paint is the industry standard. To support their arguments, they submitted the affidavits of Goss and Herbert Goss, wherein each averred first, that the use of metal buckets while painting energized electrical substations reduces injuries and saves lives and, second, that no viable alternative to zinc-based paint exists.
Best, on the other hand, failed to submit any type of evidence with regard to the use of zinc-based paint and metal buckets. As such, he failed to satisfy his burden under Dresher, and summary judgment on this portion of his complaint was proper.
c. Lack of Safety Instructions and Training and Misrepresentations of Danger
Finally, Best alleged that Goss and ESS had knowledge of the dangerous conditions when they made deliberate misrepresentations to Best with regard to the danger that surrounded him and that they failed to adequately instruct and train him with safety procedures. In support of their motion for summary judgment on this allegation, Goss and ESS again offered the affidavits of Goss and Herbert Goss, wherein each relayed that two safety meetings were held prior to commencing painting on the day in question and that Best at no time raised any questions or concerns with regard to safety procedures. Goss and ESS also offered the daily safety checklist, signed by Best, which acknowledged that he understood the safety procedures for that day. That checklist specifically stated that the employees were to maintain a distance of at least three feet from any pothead and that only journeymen were to paint the areas around them. Finally, they pointed to several passages in Best's deposition, wherein he stated that he fully appreciated and understood the risks involved in painting electrical substations.
In return, Best submitted his own affidavit in which he averred that during his interview with ESS that he was told that the work was not dangerous as long as he was careful. He also averred that his training consisted only of verbal instructions given him during a trip, that he was never given any printed safety material and that he was never advised how to use some of the safety equipment he was provided. Best also offered an OSHA violation wherein ESS is cited for failure to adequately train its employees in conformity with federal regulations. The violation was issued approximately one and half months before Best began working for ESS.
Construing the evidence in favor of the non-moving party, this Court is unable to conclude that a genuine issue of material fact exists as to whether Goss and ESS adequately trained Best or whether it made any misrepresentations to him with regard to the risks involved with painting electrical substations. Given Best's admission during his deposition and the fact that the OSHA violation did not specifically involve his training, reasonable minds could only conclude that Goss and ESS had neither failed to adequately train Best nor made any misrepresentations to him. Therefore, the trial court's grant of summary judgment on these allegations was proper.
d. Prior Accidents
Best also alleged and argued that Goss and ESS had knowledge of the dangerous conditions that resulted in his injuries because ESS had several similar accidents during the two years prior to his accident. In advancing their motion for summary judgment on this point, Goss and ESS tacitly conceded that ESS had three accidents in the two years prior to Best's fall. However, they argued that, as a matter of law, a history of prior accidents does not in and of itself establish that they had knowledge of the dangerous condition that resulted in Best's injuries. This Court is not persuaded.
Evidence of prior accidents involving the dangerous condition at issue is one factor to be considered under the Fyffe analysis.Foust v. Magnum Restaurants, Inc. (1994), 97 Ohio App.3d 451,455, citing Van Fossen, 36 Ohio St.3d at 118. Thus, while ESS's history of prior, similar accidents, standing alone, may not be conclusive of Goss and ESS's knowledge at the summary judgment stage, it strongly suggests that they were in fact aware of the exact danger that besieged Best on October 9, 1989. See id. Cf.Buccione v. Cincinnati, Inc. (Dec. 13, 1991), Huron App. No. H-90-27, unreported, 1991 Ohio App. LEXIS 5913, at *15 (holding that evidence of a few prior accidents was not sufficient to raise inference that employer knew that an accident was substantially certain to occur). As such, a genuine issue of material fact exists as to whether Goss and ESS had knowledge of the dangerous condition Goss presented when he sprayed paint at and around Best's feet.
2. Substantially Certain Harm
Moving to the second element of the Fyffe test, Goss and ESS argued that Best could not prove, as a matter of law, that his injuries were substantially certain to occur. Specifically, they maintained that Best's fall and subsequent electrocution were not a substantial certainty due to (1) Goss' actions when he sprayed at and around Best's feet, (2) ESS's requirement that Best use zinc-based paint and metal buckets, (3) Goss and ESS's failure to adequately train Best, and (4) Goss and ESS's knowledge of prior accidents of a similar nature.[3]
To support their arguments, Goss and ESS once again directed the trial court's attention to the passage in Best's deposition, wherein he conceded that Goss did not spray at or near Best's feet in an effort to injure him. Furthermore, Goss and ESS argued that a history of prior accidents does not establish per se that the injury at issue was a substantial certainty.
In response, Best argued that Goss and ESS knew that having any employee walk or be subjected to walking on wet paint over energized potheads creates a substantial certainty of harm to that employee. In support of his argument, Best submitted ESS's safety procedures which specifically prohibit employees from walking on wet paint. He further offered Goss' deposition, wherein Goss acknowledged that this rule was to prevent falls and electrocution as a result of such falls. In addition, Best maintained that ESS had a prior history of accidents and, that as a result, his injuries were a substantial certainty.
As determined supra, a history of prior accidents may raise a genuine issue of material fact with respect to the employer's knowledge. Nevertheless, this Court agrees with Goss and ESS in that such a holding is not tantamount to a determination that a genuine issue of material fact exists with respect to whether the harm that occurred was a substantial certainty. See Baldner v. G S Titanium, Inc. (July 15, 1998), Wayne App, No. 97CA0059, unreported, at 4. A history of prior accidents may constitute knowledge, gross negligence or recklessness on the part of the employer; but standing alone, it does not raise a question of material fact as to substantial certainty. However, this Court has previously observed that the relevant facts and circumstances which establish substantial certainty include, but are not limited to prior accidents of a similar nature and noncompliance by employer with industry safety standards. Church v. Rondy Co.,Inc. (June 11, 1997), Summit App. No. 18037, unreported, at 7-8. Thus, it becomes incumbent upon this Court to review the totality of the circumstances to determine whether a genuine issue of material fact exists as to whether Best's injuries were a substantial certainty. Id. at 7.
After reviewing the entire record, construing the evidence in favor if the non-moving party and examining the appropriate law, this Court concludes that the probability that Best would slip, fall, come in contact with "live" potheads and be injured as a result of Goss' conduct, i.e. spraying paint at or near Best's feet, could very well reach that of substantial certainty in the mind of a reasonable person. This is especially true in light of the fact that Goss had witnessed, just weeks prior to the incident in question, an employee be injured as he passed too close to an energized pothead. Consequently, a genuine question of material fact exists on this element of the Fyffe test, and the trial court's judgment was in error.
3. Requirement to Continue
The third and final element of the Fyffe test requires that a claimant prove that he or she was required to continue to perform his or her job in the face of danger. Goss and ESS's sole
argument to the trial court and on appeal was that Best could not prove the third element of his claim because Goss and ESS were without knowledge of the dangerous condition that caused his injuries. This argument has been discarded supra, as a genuine issue of material fact exists as to whether Goss and ESS had knowledge of the dangerous condition Goss created when he sprayed paint at and around Best's feet. For that reason, Goss and ESS failed to carry their burden under Dresher, and the trial court's grant of summary judgment was improper to that extent.
 III.
The trial court held that Best could not prove, as a matter of law, that his injuries were not a result of any of the dangerous conditions alleged in the complaint. After reviewing the record, and construing all the evidence in favor of Best, this Court disagrees. A genuine issue of material fact exists as to the first and second elements of the Fyffe test, and Goss and ESS failed to carry their Dresher burden as to the third element. The judgment of the trial court is reversed and the cause remanded for proceedings consistent with this decision.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellees.
 ___________________________ BETH WHITMORE
FOR THE COURT CARR, J.
[1] In his complaint, Best also alleged that Goss and ESS had willfully destroyed material evidence. The trial court granted summary judgment against Best on this claim, finding that he had not presented any evidence in response to Goss and ESS's motion. However, on appeal, Best abandoned this claim and, as a result, has conceded the correctness of the trial court's decision in that regard.
[2] In response to the Ohio Supreme Court's holding inBlankenship, the General Assembly enacted R.C. 4121.80
(Am.Sub.S.B. No. 307), thereby superceding its holding. However, in Brady v. Safety-Kleen Corp. (1991), 61 Ohio St.3d 624, the Ohio Supreme Court invalidated R.C. 4121.80 in its entirety. In an attempt to once again supercede the law stated in Blankenship andBrady, the General Assembly enacted R.C. 2745.01 (Am.H.B. No. 103). On April 14, 1999, the Ohio Supreme Court held R.C. 2745.01
unconstitutional. Johnson v. BP Chemicals, Inc. (1999), 85 Ohio St.3d 298,308. As such, the common law rules set forth inBlankenship and its progeny control.
[3] Because Goss and ESS successfully argued that they were without knowledge of a dangerous condition with regard to the paint, metal buckets, alleged misrepresentations and Best's training, these points will not be addressed here.